## Exhibit 1

*Sadar Doe v. Bush*, 05-cv-1704, Memorandum Order (D.D.C. May 11, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SADAR DOE, *et al.*, ) | |
| ) | |
| Petitioners ) | |
| ) | |
| v. ) | Civil Action No. 05-CV-1704 (JR)(LFO)(AK) |
| ) | |
| GEORGE W. BUSH, *et al.*, ) | |
| ) | |
| Respondents. ) | |

## MEMORANDUM ORDER

Pending before the Court is Petitioners' Motion for an Order Compelling Counsel Access (Mot.) and Memorandum in Support (Mem.) [31] and Respondents' Opposition (Opp'n) [32].[1] Petitioners claim that Respondents have refused and continue to refuse counsel access to Petitioners as required by the Protective Order. The Government insists that counsel provide written evidence of their authorization to represent the Petitioner before counsel will be allowed to meet with their clients. Upon consideration of the parties' filings to the Court, and following a conference with parties, Petitioners' Motion is hereby GRANTED.

---

[1] On November 2, 2005, in recognition of "the need to promote orderly and efficient case management of all *habeas* petitions . . . relating to the rights of [Guantanamo] detainees," Judge Kessler, acting as Chair of the Calendar and Case Management Committee referred all motions "pertaining to interpretation or construction of any protective order" entered in any of the Guantanamo *habeas* cases to the undersigned for resolution pursuant to LCvR 72.2(a). A party may seek reconsideration of a ruling by a magistrate judge within 10 days after being served with the magistrate judge's order. LCvR 72.2(b). Rulings issued by a magistrate judge pursuant to LCvR 72.2 are reviewed by the district court judge, in this case Judge Robertson, on a "clearly erroneous" or "contrary to law" standard. LCvR 72.2(c).

## Background

The Petitioners, Sadar Doe (a/k/a Bahtiyar Mahout) and Arkeen Doe (a/k/a Arkina Amahmud), are brothers and Chinese Uighur[2] detainees presently held by the United States Government at the Guantanamo Bay Naval Station. (*See* Pet'rs' Mem. at 1.) They have been detained without charge and held virtually incommunicado for more than four years. In December of 2004, the Combatant Status Review Tribunal (CSRT) determined that the Petitioners were enemy combatants, but nevertheless recommended at least one if not both of them for release from Guantanamo as soon as possible. (*See* Pet'rs' Mem. Showing Cause Why Pet. for Writ of Habeas Corpus Should not be Dismissed for Lack of Next Friend Standing at 3, Dkt. No. 23, Nov. 18, 2005.) Petitioners allege that the CSRT adjudged them to be enemy combatants only to avoid their forced repatriation to China, where there is reason to fear they would be indefinitely detained and tortured.[3] (*See* Pet'rs' Mem. in Support of Mot. to Compel Access to Classified Factual Returns at 2, Dkt. No. 29, Feb. 8, 2006.)

In June, 2004, the Supreme Court ruled that the District Court had jurisdiction to consider aliens' "*habeas corpus* challenges to the legality of their [executive] detention at the Guantanamo

---

[2] Uighurs are a Turkic Muslim ethnic minority that has been, and continues to be, brutally oppressed by the Chinese government. *See* U.S. Dep't of State, Country Reports on Human Rights Practices, China - 2005 (March 8, 2006), *available at* http://www.state.gov/g/drl/rls/hrrpt/2005/61605.htm

[3] Most Uighur detainees have been determined to be "No Longer Enemy Combatants," a somewhat euphemistic term, given that these same detainees were never determined to be enemy combatants in the first instance. (*See* Pet'rs' Opp'n to Resp'ts' Mot. to Show Cause Why Case Should Not be Dismissed for Lack of Proper "Next Friend" Standing at 2.) In *Qassim v. Bush*, 05-497 (JR), counsel for other Uighur detainees did not learn that their clients had been determined not to be enemy combatants until after counsel went to Guantanamo and met with their clients, even though Respondents had known of the detainees' innocence for several months. *See id.* at 3 n.3.

2

Bay Naval Base." *Rasul v. Bush*, 542 U.S. 466, 484 (2004). In compliance with *Rasul*, the Government began in late 2004 to notify detainees of their right to challenge the legality of their detention in federal court. (Sweigart Decl. ¶¶ 2-5.)[4] The "DoD notification"[5] instructs detainees that they may challenge their detention "through a process called *a petition for a writ of habeas corpus*,"[6] and explains that they may *either* file a petition themselves *or* they "may ask a friend or family member or a lawyer to file such a petition with the court."[7] *Id.*, Exs. A-C.

At some point in early 2005, Petitioners, who do not speak English, asked a fellow

---

[4]*Attached as* Exhibit B to Resp'ts' Mot. for an Order to Show Cause Why Case Should not be Dismissed for Lack of "Next Friend" Standing (Dkt. No. 4).

[5]The Department of Defense (DoD) issued three different types of notifications to detainees, depending on whether the detainee had been determined 1) an enemy combatant whose status may be reviewed by the Administrative Review Board (ARB), 2) an enemy combatant not eligible for ARB consideration because he is triable by Military Commission, or 3) a non-enemy combatant. (Second) Sweigart Decl. ¶¶ 3-5, Exs. A-C. Although each notification contains slightly different information, all three contain the same two paragraphs informing detainees of their right to seek review of the legality of their detention.

[6]The notification fails to provide any explanation of what a petition for *habeas corpus* is or how a detainee would go about getting one. (Second) Sweigart Decl., Exs. A-C. Some detainees were apparently so confused about what to do with the notice that they "simply mailed the entire [blank] sheet itself back to the court because they did not know what else to do to get legal assistance." Gutierrez (Kabir) Decl. ¶ 12, *Razakah v. Bush*, 05-2370 (D.D.C. Feb. 3, 2006) (Dkt. No. 8).

[7] The notification instructs detainees to write to the District Court in order to challenge their detention, but provides little in the way of explanation about what detainees should write:

> If you do not have a lawyer or a family member or friend who could file this petition for you, you may file your own petition. According to prior court rulings, petitions should be sent to:
> United States District Court for the District of Columbia
> 333 Constitution Ave., NW
> Washington, DC 20001.

(Second) Sweigart Decl., Exs. A-C.

3

detainee, Usama Abu Kabir, to help them find a lawyer to challenge their potentially indefinite detention without charge. (Pet'r Mem. at 1-2.) Petitioners sought help from Kabir, a Jordanian citizen, because he speaks fluent English and other detainees knew that he trusted his lawyer. (*See* Gutierrez (Kabir) Decl. ¶¶ 4, 19-20.)[8] Kabir agreed to help by sending his lawyer the names of detainees who wanted to challenge their detention and who had asked for lawyers. (Pet'rs' Mem. Showing Cause Why Pet. for Writ of Habeas Corpus Should not be Dismissed for Lack of Next Friend Standing at 6. Dkt. No. 23, Nov. 18, 2005.)

---

[8] In Oct. of 2005, a number of pending motions challenging "next friend" standing in Guantanamo *habeas* cases were transferred to Judge Oberdorfer pursuant to LCvR 40.6. *See Ahmed Doe v. Bush*, No. 05-1458 (Oct. 13, 2005) (Dkt. No. 8); *Nabil v. Bush*, No. 05-1504 (Oct. 25, 2005) (Dkt. No. 8); *Al Hawary v. Bush*, No. 05-1505 (Oct. 25, 2005) (Dkt. No. 10); *Shafiiq v. Bush*, No. 05-1506 (Oct. 25, 2005) (Dkt. No. 10); *Idris v. Bush*, 05-1555 (Oct. 21, 2005) (Dkt. No. 6); *Al Razak v. Bush*, 05-1601 (Minute Order dated Nov. 14, 2005); *Kabir v. Bush*, 05-1704 (Nov. 1, 2005) (Dkt. No. 18); *Qasim v. Bush*, 05-1779 (Oct. 31, 2005) (Dkt. No. 4); *Zakirjan v. Bush*, 05-2053 (Oct. 21, 2005) (Dkt. No. 17); *Muhammed v. Bush*, 05-2087 (Nov. 11, 2005) (Dkt. No. 11). In response to Petitioners' allegations that Respondents were preventing counsel from obtaining direct authorizations from their detainee-clients, Judge Oberdorfer ordered Petitioners and Respondents to confer with this Court to determine "how counsel for Petitioners may obtain access to the detainees who allegedly seek to be represented by next friends to determine if the detainees will authorize counsel to represent them directly." *See* Order of Oberdorfer, J., dated Nov. 4, 2005.

Pursuant to Judge Oberdorfer's Order, this Court held a conference with counsel for the Petitioners and Respondents in those cases in which a 'next friend' challenge had been raised. The Court instructed Petitioners' counsel to meet with as many of the "next friends" as possible to seek additional information about the circumstances of their relationships with the detainees who are the real parties in interest. Gitanjali Gutierrez, who is of counsel in many of the Guantanamo *habeas* cases, met with Mr. Al-Rawi, Mr. Kiyemba and Mr. Kabir. These meetings shed some light on the ways detainees may have understood their legal rights and the process for challenging their detention in federal court. *See* Gutierrez (Kabir) Decl., *filed in Razakah v. Bush*, 05-2370 (D.D.C. Feb. 3, 2006) (Dkt. No. 8); *see also* Gutierrez (Al-Rawi Decl.), *attached as* Exhibit B to Pet'r Supp. to Mot. to Exp., *Adem v. Bush*, 05-723 (D.D.C. Feb. 7, 2006) (Dkt. No. 32). Respondents have since transferred Jamal Kiyemba to the custody of the government of Uganda. *See* Respondents' Notice of Transfer, *Deghayes v. Bush*, 04-2215 (Feb. 9, 2006) (Dkt. No. 39). Kiyemba, who speaks English, had relayed the requests of three other detainees for a lawyer to his lawyer. *See Nabil v. Bush*, No. 05-1504; *Shafiq v. Bush*, No. 05-1506; *Muhammed v. Bush*, No. 05-2087.

4

On May 1, 2005, Kabir provided his attorney with Petitioners' names and signed a statement attesting to their request for representation to challenge their detention. (Pet. for Writ of Habeas Corpus at 34.) Because the DoD notification told detainees that they could file the petition themselves or ask a "friend" to file it for them, Kabir also agreed to file the petition and act on Petitioners' behalf until they could meet with their own lawyers and confirm their desire for representation. (*See* Gutierrez (Kabir) Decl. ¶¶ 19-30; *see also* Smith Decl. ¶¶ 81-127, *attached as* Ex. A to Pet'rs' Opp'n to Resp'ts' Mot. to Show Cause Why Case Should not be Dismissed for Lack of Propert "Next Friend" Standing, Dkt. No. 8, Sept. 12, 2005.)

Kabir's lawyer, Clive Stafford Smith, forwarded Petitioners' names to the Center for Constitutional Rights, a national public interest organization that has coordinated *pro bono* representation for the majority of Guantanamo detainees. Elizabeth Gilson, an attorney who had volunteered with CCR, agreed to represent Petitioners on a *pro bono* basis and filed a *habeas* petition on their behalf on Aug. 25, 2005.

On October 11, 2005, Judge Robertson granted Petitioners' motion for entry of the Amended Protective Order & Revised Procedures for Counsel Access,[9] Protected Information Order and Supplemental Filing Procedures (collectively "the Protective Order"). In recognition of the security concerns attendant to the Guantanamo *habeas* cases, the Protective Order sets procedures that counsel must follow in order to meet and communicate with their clients. The Protective Order was initially approved and entered by Judge Joyce Hens Green in *In re Guantanamo Cases*, 344 F. Supp. 2d 174 (D.D.C. 2004), following intense negotiation and

---

[9]The Revised Procedures for Counsel Access are attached as Exhibit A to the Amended Protective Order.

5

litigation over its terms. *See Adem v. Bush*, __ F. Supp. 2d __, 2006 WL 751309, at *3-5 (D.D.C. March 21, 2006) (reviewing history of negotiation and entry of Protective Order), *recons. denied*, No. 05-723, slip op. (D.D.C. April 28, 2006) (Dkt. No. 42). It has since been entered in the vast majority of Guantanamo *habeas* cases pending before the District Court.

Following entry of the Protective Order, counsel for Petitioners obtained the necessary security clearances and submitted the Notification of Representation, including counsel's name, "licensing information, business and email addresses and phone numbers, as well as the name of the detainee being represented," all of which are required as prerequisites to any in-person meeting with a detainee-client. *See* Protective Order, Ex. A, § III. Counsel then sought to meet with Petitioners in person, only to be denied by Respondents on the grounds that counsel had provided insufficient evidence of their authority to represent the detainees. Petitioners now seek an order compelling Respondents to permit them access to their clients, in part so they may obtain the very authorization of representation that Respondents insist be provided prior to any visits.

## Analysis

I.  *Interpretation of the Protective Order*

The question presented to the Court is a narrow one, namely, whether counsel must provide "evidence of his or her authority to represent the detainee" prior to a counsel visit or within 10 days of the second counsel visit. The disputed phrase appears in immediately successive paragraphs in paragraphs (1) and (2) of Section III.C of the Protective Order. Paragraph (1) imposes two requirements on Guantanamo *habeas* counsel related to verification of their representation. Pursuant to paragraph (1), counsel must submit a "notification of

representation" and "evidence of [counsel's] authority to represent the detainee." *See* Protective Order, Ex. A § III.C.1. However, while paragraph (1) makes the "notification of representation" a prerequisite to counsel's access to a detainee, it imposes no time frame for the evidence of authority to represent the detainee.

> Prior to being permitted access to the detainee, counsel must provide DoD with a *Notification of Representation*. This Notification must include the counsel's licensing information, business and email addresses and phone number, as well as the name of the detainee being represented by the counsel. Additionally, counsel shall provide evidence of his or her authority to represent the detainee.

*Id.*, Ex. A, § C.1

Paragraph C.2, by contrast, establishes an explicit deadline for counsel to submit evidence of their authority to represent the detainee:

> Counsel shall provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with the detainee.

*Id.*, Ex. A § C.2.

In an attempt to avoid what can only be described as clear and explicit language, Respondents argue that in those cases filed through a next-friend, the phrase "evidence of [counsel's] authority to represent a detainee" actually refers to two separate showings of evidence, "differ[ing] in quantum of proof, with the latter showing requiring 'additional, direct' evidence," in writing from the detainee. *Adem v. Bush*, No. 05-723, slip op. at 8 (D.D.C. April 28, 2006) (rejecting government's interpretation). Respondents essentially argue that because the phrase "evidence of [counsel's] authority to represent a detainee" appears in two separate but adjacent paragraphs, it must refer to two separate types of evidence. However, Respondents' interpretation would require the Court to ignore the plain meaning of the text and to flaunt the

7

most basic rules of construction. *See Adem*, __ F. Supp. 2d __, 2006 WL 751309, at *9-11; *Adem*, No. 05-723, slip op. at 8-14 (D.D.C. April 28, 2006) (affirming magistrate judge's opinion and rejecting government's argument that evidence of authority to represent a detainee referred to a "two-step sequential showing").

Indeed, this precise question of the meaning of the phrase "evidence of [counsel's authority to represent [a] detainee" was previously presented to the Court in *Adem v. Bush*, __ F. Supp. 2d __, 2006 WL 751309, at *7-11 (D.D.C. March 21, 2006), *recons. denied*, No. 05-723, slip op. (D.D.C. April 28, 2006). In *Adem*, this Court rejected Respondents interpretation and held that the plain language of the protective order dictated that counsel was entitled to two visits with a detainee, plus 10 days, before they must provide the required evidence. *See id.* at *7-11 (interpreting protective order); *see also Armstrong v. Executive Office of the President*, 830 F. Supp. 19, 22 (D.D.C. 1993) ("[g]iving plain meaning to [the] language" of the protective order).

The instant case is no different. In fact, the question presented to the Court is identical to the question presented in *Adem*. The only difference between *Adem* and the instant case is that *Adem* was filed as a direct petition and the instant case was filed as a 'next friend' petition. The Protective Order, however, does not distinguish between cases filed by a 'next friend' and cases filed directly. *See Adem*, 2006 WL 751309, at *10-13 (rejecting government's argument that the Protective Order requires additional authorization solely for *habeas* petitions initiated through a 'next friend'). The Court cannot infer a separate two-step requirement applicable solely to 'next friend' petitions out of thin air.

Indeed, as this Court explained in *Adem*, following the Supreme Court's decision in *Rasul* and the negotiation and entry of the Protective Order, the legal fiction of a "next friend" became

8

largely irrelevant except as a mechanism for identifying those detainees who seek to challenge their detention in the first instance.[10] *See Adem*, 2006 WL 751309, at *3-5 (reviewing history of use of 'next friend' device in Guantanamo *habeas* cases). In those *habeas* cases filed since the creation and entry of the Protective Order, the detainees who initiate a *habeas* petition on behalf of a fellow detainee generally do not seek to serve procedurally as a "next friend" in the traditional sense, but are simply passing on another detainee's request for help, a fact that can be confirmed once counsel meets directly with the detainee. *See id.*, at *4-5; *see also Hamily v. Bush*, No. 05-763 (Oct. 31, 2005) (Dkt. No. 19) (Order of J. Bates dismissing Shaker Aamer as next friend and substituting Adel Hamily as sole petitioner); *Zakirjan v. Bush*, No. 05-2053 (Dec. 12, 2005) (Dkt. No. 24) (Order of Oberdorfer, J. dismissing as moot government's "Motion to Show Cause Why Case Should Not Be Dismissed for Lack of Proper 'Next Friend' Standing" because detainee who was real party in interest authorized counsel to represent him directly); *Muhammed v. Bush*, No. 05-2087 (Dec. 16, 2005) (Dkt. No. 17) (same); *Idris v. Bush*, No. 05-1555 (Nov. 1, 2005) (Dkt. No. 8) (same).

Finally, the record in this case shows that Petitioners have, in fact, provided substantial evidence that they genuinely wish to challenge their detention. The unclassified portions of the CSRT records show that Petitioner Arkeen clearly and emphatically stated that he wanted to challenge his detention before "the US Court system or US judges." (Pet'rs' Mem. Showing Cause Why Petition for Writ of Habeas Corpus Should not be Dismissed for Lack of Next Friend Standing at 7.) Petitioner Arkeen testified:

---

[10] A "next friend" might still be necessary if, however, a detainee is incapacitated or otherwise unable to personally verify his intent to challenge his detention.

> I have no more comments [other than the written responses], that is good enough evidence, which my Personal Representative already presented. What I wanted to do was go to Afghanistan to look for my brothers. I wanted the US Court system or US Judges to determine my case, they have to come up with, if I am innocent or not. If I am guilty they should come up with my punishment or what ever I deserve to serve time I will do that. Other wise [sic] do something faster to finish my case. I would like the results as soon as possible.

*Id.*

Respondents insist that, absent Petitioners' signatures on a form, Kabir's alleged lack of proper next friend standing precludes this Court from further inquiring into the truth of Petitioners' request to challenge their detention. It is inconceivable that the Court's authority to investigate Petitioners' request would be so constrained. Petitioners Arkeen and Sadar are "entitled to present the facts surrounding their confinement to the Court. It is equally clear that the Court is authorized to craft the procedures necessary to make this possible, in order that the Court might fully consider Petitioners' challenge to their detention." *Al Odah v. United States*, 346 F. Supp. 2d 1, 7 (D.D.C. 2004).

As Judge Roberts explained, not only does the plain language of the Protective Order not require a showing of direct evidence of authorization to represent a detainee as a prerequisite to an in-person meeting, but "[r]equiring a Guantanamo detainee to identify a specific lawyer from among all the volunteer lawyers -- most of whom are unknown to the detainee before a meeting -- is a meaningless exercise. It would be unconscionable to tether a detainee's access to counsel to such an unworkable prerequisite." *Adem*, No. 05-723, slip op. at 16 (D.D.C. April 28, 2006). Respondents concede that the Protective Order remains in effect, and the Court has inherent power to enforce its own lawful orders. *See Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006). Pursuant to the Protective Order, therefore, Petitioners are entitled to meet with their

10

lawyers.

## II.   Jurisdiction

Respondents contend that the Detainee Treatment Act of 2005 (the "DTA") divests this Court of jurisdiction to decide the instant motion.[11]   The retroactive effect of the DTA was addressed in supplemental briefing in the Guantanamo *habeas* appeals pending before the D.C. Circuit in *Kalid v. Bush*, 355 F. Supp. 2d 311 (D.D.C. 2005), *appeal docketed sub nom. Boumediene v. Bush*, Nos. 05-5062, 05-5063 (D.C. Cir. March 10, 2005), and before the Supreme Court in *Hamdan v. Rumsfeld*, 415 F.3d 33 (D.C. Cir. 2005), *cert. granted*, 126 S. Ct. 622 (U.S. Nov. 7, 2005) (No. 05-184).[12]   Petitioners' motion for an order compelling access to counsel pursuant to the Amended Protective Order, however, does not implicate any of the jurisdictional questions currently pending in the D.C. Circuit and the Supreme Court.

Respondents concede, as they must, that the Protective Order remains in effect in Petitioners' case and in each of the Guantanamo *habeas* cases in which it was entered.  Counsel for other detainees continue to visit their clients according to its terms. Indeed, under no circumstances would DoD permit counsel to visit detainees in Guantanamo Bay without counsel's signed agreement to abide by the Protective Order.  When an attorney wishes to share information learned from a detainee with other co-counsel, members of the DoD Privilege Review Team continue to conduct classification reviews of detainee mail and attorneys' notes as

---

[11]On December 30, 3005, President Bush signed into law the Detainee Treatment Act of 2005, Pub. L. No. 109-148, Tit. X, 119 Stat. 2680 (the "DTA"). Respondents argue that the DTA divests the District Court of jurisdiction over the Guantanamo *habeas* petitions, including those already filed prior to the DTA's passage.

[12]Oral argument before the D.C. Circuit was held on March 22, 2006, and before the Supreme Court on March 28, 2006.

11

required by the Protective Order. The acknowledgments signed by *habeas* counsel agreeing to abide by the terms of the Protective Order remain in effect, *see* Protective Order, Ex. C, "Acknowledgment," and counsel remains subject to this District Court's contempt power, *see Armstrong v. Executive Office of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993). Were the situation reversed, and were counsel for a detainee alleged to have violated the Protective Order, the Court has no doubt that Respondents would seek relief immediately.

"[A] protective order, like any ongoing injunction, is always subject to the inherent power of the district court." *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993); *see also Armstrong*, 1 F.3d at 1289 (recognizing courts' "inherent power to enforce compliance with their lawful orders"); *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006) (same); *cf. Gambale v. Deutsche Bank, AG*, 377 F.3d 133, 140-41 (2d Cir. 2004) (recognizing court's jurisdiction to modify protective orders that remain in effect, even after dismissal of the underlying litigation); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (same), *cert. denied, American Special Risk Ins. Co. v. Rohm & Haas Co.*, 498 U.S. 1073 (1991). It would be untenable for the District Court to be put in a position where it is powerless to enforce its own protective order, presently in effect and over which it has continuing control.

Moreover, it is well-settled law that "a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002). Petitioners are entitled to meet with their counsel in order to litigate that very question. *See United States v. United Mine Workers of America*, 330 U.S. 258, 290-93 (1947) (explaining that, until such time as jurisdiction is determined not to exist, a court has the authority to issues such orders as necessary "to preserve

the existing conditions" of any pending action).[13] Thus, the question of when, and under what circumstances the existing Protective Order permits Petitioners to meet with their lawyers - a Protective Order that Respondents concede remains in effect and binding on the parties - has no bearing on the question of which Court has jurisdiction to review the merits of Petitioner's challenge to his detention.[14] See *Adem*, No. 05-723, slip op. at 16-17 (D.D.C. April 28, 2006).

It has been over a year since Petitioners first tried to get a lawyer to help them challenge their detention. It is unacceptable to wait any longer. Respondents are ordered to comply with the Protective Order and allow Petitioners' counsel to meet with them in person as soon as possible.


Dated: May _11th_, 2006

                                            /s/
                                            ALAN KAY
                                            UNITED STATES MAGISTRATE JUDGE

---

[13]For example, it is unknown whether Respondents are attempting to repatriate Petitioners under the same type of agreement recently reached with Albania. On May 6, just three days before their appeal was scheduled to be heard before the D.C. Circuit, Respondents released five ethnic Uigher detainees to Albania. *See* Pete Yost, *Chinese Detainees Released to Albania*, Washington Post, May 6, 2006, at A9. It seems the Government transferred the five men without notifying either them or their counsel of the impending transfer. *See id.*

[14]Presumably, counsel for Petitioners would also represent them in any proceedings before the D.C. Circuit. Thus, the need to resolve questions regarding the logistics of counsel access will remain an issue, even if the D.C. Circuit and the Supreme Court determine that the DTA applies to those *habeas* cases currently pending in the District Court.