IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THABID, *et al.*, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-2398 (ESH) |
| | ) | |
| GEORGE W. BUSH, | ) | |
| President of the United States, *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**RESPONDENTS' MEMORANDUM IN OPPOSITION TO URGENT MOTION FOR
ACCESS TO COUNSEL AND RESPONDENTS' MOTION FOR ORDER TO
SHOW CAUSE WHY PETITION SHOULD NOT BE DISMISSED FOR
LACK OF PROPER "NEXT FRIEND" STANDING**

Respondents hereby oppose petitioners' emergency motion for access by counsel to

Thabid and Ali (dkt. no. 15), detainees at Guantanamo Bay whose petition for writ of habeas

corpus has not been properly authorized and is therefore not properly before this Court.  The

motion should be denied because Ali already has a previously-filed habeas petition pending

before Judge Walton of this Court, and relief on Ali's behalf should not be permitted to be

pursued in two habeas petitions at the same time.  Furthermore, although the Court has entered

the Protective Order in this case, the Protective Order by its terms does not require respondents to

permit an attorney visit with any detainee, particularly where, as here, the requirements of the

Protective Order have not been satisfied.  Thus, in order to require respondents to permit counsel

access in this instance, the Court would need to assert authority and jurisdiction independent of

the Protective Order, which would be improper given the Detainee Treatment Act's investment

of exclusive jurisdiction over this action in the Court of Appeals.

Accordingly, respondents request that the Court deny petitioners' motion with respect to petitioner Ali, and that the Court provide petitioners' counsel the opportunity to demonstrate that the petition for writ of habeas corpus filed on behalf of Thabid has been properly authorized, which would satisfy the requirements of the Protective Order.[1]  Only once these requirements are satisfied, would counsel access to Thabid be appropriate.[2]  Respondents therefore request that the Court order petitioners to show cause why the petition, not directly authorized by Thabid, the detainee at Guantanamo Bay for whom habeas relief is sought, but instead brought by another current or former detainee claiming to act as his "next friend," should not be dismissed for lack of proper next friend standing.[3]  The putative "next friends" in this case bear the burden of establishing their next friend status and justifying the exercise of the Court's jurisdiction over this action.  See Whitmore v. Arkansas, 495 U.S. 149, 163 (1990) ("'Next friend' standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another.").  To do so, they must satisfy the "two firmly rooted prerequisites" articulated by the Supreme Court in Whitmore: (1) he must demonstrate that the detainee on whose behalf he claims to file a petition for writ of habeas corpus cannot challenge the legality of his detention himself; and (2) he must have a significant relationship with this detainee in order to demonstrate that he is truly

---

[1]  The Court should do the same with respect to Ali if his petition is not dismissed due to the existence of the previously filed duplicate petition.

[2]  Petitioners' counsel were informed by telephone and e-mail prior to the filing of their motion that respondents' resistance to permitting counsel access to Thabid is based on the lack of jurisdiction in this case, including as a result of the lack of proper next friend standing, as opposed to any issue respecting the identity of Thabid.

[3]  This motion is without prejudice to respondents' position that the Court lacks jurisdiction in this case in light of the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 ("the Act").  See infra at 3-4 & n.3.

2

dedicated to the detainee's best interests.  Id. at 163-64.  The petition filed on behalf of petitioner

Thabid fails to meet either requirement.  Petitioners' counsel should be provided the opportunity

to demonstrate that the petition was filed by a legitimate next friend, and thereby establish that

the petition is properly authorized and properly before this Court.  If petitioners cannot satisfy the

requirements for next friend standing, the Court cannot exercise jurisdiction over the petition

regardless of the Detainee Treatment Act's withdrawal of the Court's jurisdiction over this

action, and the petition must be dismissed.

## BACKGROUND REGARDING THE CASE AND THE DETAINEE TREATMENT ACT

The petition in this case was filed on December 14, 2005.  The Court entered the

Protective Order[4] in this case on July 20, 2006, without respondents having had the opportunity

to respond to petitioners' motion seeking entry of the Protective Order.

On December 30, 2005, the Detainee Treatment Act of 2005 became law.  The Act,

among other things, amends 28 U.S.C. § 2241 to eliminate court jurisdiction to consider *habeas*

petitions and other claims by aliens held as enemy combatants at Guantanamo Bay, id.,

§ 1005(e)(1), and creates an exclusive review mechanism in the D.C. Circuit to address the

validity of the detention of such aliens and final decisions of any military commissions, id.,

§ 1005(e)(1), (e)(2), (e)(3).  Section 1005(e)(2) of the Act states that the D.C. Circuit "shall have

exclusive jurisdiction to determine the validity of any final decision of a Combatant Status

---

[4] In re Guantanamo Detainee Cases, 344 F. Supp. 2d 174 (D.D.C. Nov. 8, 2004)
("Protective Order"); Order Supplementing and Amending Filing Procedures Contained in
November 8, 2004 Amended Protective Order in In re Guantanamo Detainee Cases, No. 02-CV-
0299, et al. (D.D.C. Dec. 13, 2004); Order Addressing Designation Procedures for "Protected
Information" in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Nov. 10,
2004).

3

Review Tribunal that an alien is properly detained as an enemy combatant," and it further specifies the scope and intensiveness of that review.

While the Supreme Court in Hamdan v. Rumsfeld, 548 U.S. —, 126 S. Ct. 2749, 2762-69 (U.S. June 29, 2006), held that § 1005(e)(1) of the Detainee Treatment Act did not apply to *habeas* petitions pending prior to the enactment of the Act, it recognized that the exclusive review provisions of the Act did expressly apply to cases pending prior to enactment.  Although the petitioner in Hamdan escaped the Act because his challenge did not involve a final decision of a military commission within the exclusive jurisdiction of the Court of Appeals under § 1005(e)(3), the Court reserved the question of the effect of the exclusive review provisions of the Act on other cases, stating that "[t]here may be *habeas* cases that were pending in the lower courts at the time the DTA was enacted that do qualify as challenges to 'final decision[s]' within the meaning of subsection (e)(2) or (e)(3).  We express no view about whether the DTA would require transfer of such an action to the District of Columbia Circuit."  Hamdan, 126 S. Ct. at 2769 n.14.  The above-captioned case is such a case, i.e., challenging petitioners' designation as an enemy combatant through the Combatant Status Review Tribunal.  Given the Act's investment of exclusive review in the Court of Appeals, the District Court lacks jurisdiction over this case for it is well-settled that an exclusive-review scheme, where applicable, precludes the exercise of jurisdiction under more general grants of jurisdiction, including *habeas corpus*.  Cf., e.g., 5 U.S.C. § 703 ("form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for . . . writs of . . . habeas corpus"); Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207-09 (1994) ("exclusive"

jurisdiction under federal Mine Act precludes assertion of district court jurisdiction); <u>FCC v. ITT World Communications, Inc.</u>, 466 U.S. 463, 468 (1984) (Hobbs Act) ("The appropriate procedure for obtaining judicial review of the agency's disposition of these issues was appeal to the Court of Appeals as provided by statute."); <u>Laing v. Ashcroft</u>, 370 F.3d 994, 999-1000 (9th Cir. 2004) ("§ 2241 is ordinarily reserved for instances in which no other judicial remedy is available"); <u>Lopez v. Heinauer</u>, 332 F.3d 507, 511 (8th Cir. 2003) ("Because judicial review was available . . . the district court was not authorized to hear this § 2241 habeas petition."). <u>See</u> <u>also</u> <u>Telecommunications Research and Action Center v. FCC</u>, 750 F.2d 70, 77 (D.C. Cir. 1984) ("even where Congress has not expressly stated that statutory jurisdiction is 'exclusive' . . . a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute") (footnote omitted); <u>id.</u> at 75, 78-79 (request for relief in district court that might affect Court of Appeals' future, exclusive jurisdiction is subject to the exclusive review of the Court of Appeals).  The relief requested by petitioners would require an assertion of jurisdiction and authority in the case inconsistent with the Act's investment of exclusive jurisdiction in the Court of Appeals, and respondents' argument in this regard is in no way immaterial or premature.  <u>See</u> <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94 (1998) ("Without jurisdiction [a] court cannot proceed at all in any cause."); <u>see</u> <u>also</u> <u>Ex parte McCardle</u>, 74 U.S. (7 Wall.) 506, 514 (1869) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

      Thus, the Supreme Court's decision in <u>Hamdan</u> has not resolved the issue of whether this Court may exercise jurisdiction in this case in light of the Act.  The effect of the Act in light of

the <u>Hamdan</u> decision is being addressed in supplemental briefing in the Guantanamo detainee appeals pending before the D.C. Circuit (<u>Boumediene v. Bush</u>, No. 05-5062, and <u>Al Odah v. United States</u>, No. 05-5064), and is scheduled to be completed by August 15, 2006. In the meantime, it would be appropriate for the Court to continue the stay ordered in this case on March 31, 2006, and deny petitioners' request for relief. In any event, the motion should be denied for the reasons discussed below.

## **ARGUMENT**

### I.    **Petitioner Ali Should Not Be Permitted to Seek Relief Through Multiple Habeas Petitions.**

The relief requested on behalf of petitioner Ali should be denied if for no other reason than because Ali, identified by petitioners' counsel as the detainee with Interment Serial Number ("ISN") 250, has a previously filed habeas petition pending in <u>Mohammom v. Bush</u>, No. 05-CV-2386 (RBW). As respondents recently explained in <u>Mohammom</u>, petitioners "Mohammed LNU (<u>i.e.</u>, last name unknown) and "Ali LNU" in <u>Mohammon</u> have each been identified as detainee ISN 250 in that case. <u>See</u> Respondents' Status Report, Ex. D in <u>Mohammom v. Bush</u>, No. 05-CV-2386 (RBW) (dkt. no. 109); <u>see</u> <u>Mohammon</u> Petition ¶¶ 220, 238. Accordingly, it is not appropriate that relief on behalf of Ali be pursued in this case, when Ali has a previously filed habeas petition pending in this Court before Judge Walton.

### II.    **The Protective Order Does Not Compel Respondents to Provide Counsel Access to Detainees at Guantanamo Bay.**

Although respondents acknowledge that the Court has entered the Protective Order in this case, the Protective Order does not order, require, or compel respondents to permit a counsel visit

with Thabid or Ali. The first two paragraphs of the Protective Order set forth its premises,

function, and scope:

> 1.     This case likely involves classified national security
> information or documents, the storage, handling and control of
> which require special security precautions, and access to which
> requires a security clearance and a "need to know."  This case may
> also involve other protected information or documents, the storage,
> handling and control of which may require special precautions in
> order to protect the security of United States government personnel
> and facilities, and other significant government interests.
>
> 2.     The purpose of this Protective Order is to establish the
> procedures that must be followed by all petitioners' counsel, their
> respective petitioner(s), all other counsel involved in this case,
> translators for the parties, and all other individuals who receive
> access to classified national security information or documents, or
> other protected information or documents, in connection with this
> case, including the privilege team as defined in Exhibit A.

Protective Order, ¶¶ 1, 2.

To serve this overarching function of "prevent[ing] the unauthorized disclosure or

dissemination of classified national security information and other protected information," id. at

1, the Protective Order further provides that "*Petitioners' counsel* are bound by the terms and

conditions set forth in the 'Revised Procedures for Counsel Access to Detainees At the U.S.

Naval Base in Guantanamo Bay, Cuba,' and the procedures for handling mail and documents

brought into and out of counsel meetings, attached hereto as Exhibit A."  Id., ¶ 6 (emphasis

added).  Moreover, "[t]his Protective Order specifically incorporates by reference all terms and

conditions established in the procedures contained in Exhibit A *to the extent they place*

*limitations on petitioners' counsel in their access to and interaction with petitioners or handling*

*of information*."  Id. (emphasis added).

7

The Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba, annexed to the Protective Order as Exhibit A, in turn, set certain terms, conditions, and limitations for *habeas* counsel's access to properly represented detainees and sets out procedures and requirements for the handling of information obtained from and delivered to detainees. For example, it requires that visiting counsel obtain a security clearance, see id., Ex. A, § III.A, and must sign an affirmation acknowledging his or her agreement to comply with the counsel access procedures. See id., Ex. A, § III.B. Further, it provides that "[p]rior to being permitted access to the detainee," counsel must "provide evidence of his or her authority to represent the detainee." Id., Ex. A, § III.C.1. In other Guantanamo detainee cases, this evidence has typically taken the form of letters from detainees directly authorizing a challenge to their detention, or affidavits and authorizations of "next friends" who have filed petitions on behalf of detainees. In a proper "next friend" case, because the detainee "remains the real party in interest," see Whitmore v. Arkansas, 495 U.S. 149, 163 (1990), the access procedures further require a second, subsequent type of authorization, directly from the detainee, once counsel in a proper next friend case is provided access to the detainee.[5] See Protective Order, Ex. A, § III.C.2. (counsel must "provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with a detainee").[6] Thus, while the Access Procedures certainly operate with the assumption

---

[5] This two-layer requirement regarding counsel's authority to bring and then maintain the lawsuit was appropriately established in light of the fact that the Guantanamo *habeas* cases pending at the time the access procedures were negotiated and established were uniformly "next friend" cases.

[6] Counsel in this case have yet to provide sufficient evidence of their "authority to represent" petitioners, the detainees for whom habeas relief is purportedly sought, i.e., to

that counsel visits will occur in that they set the terms and procedures applicable to any such

visits, they do not themselves compel respondents to provide such visits[7] on demand of counsel.[8]

Hence, the Court cannot compel respondents to permit a visit by counsel with a detainee by

relying upon enforcement of the terms of the Protective Order and Access Procedures.

Recently, Magistrate Judge Kay has interpreted the Protective Order as guaranteeing any

counsel who purport to represent a detainee privileged access to the detainee even in the face of

respondents' challenge to next friend standing and other jurisdictional challenges in the case.

See, e.g., Adem v. Bush, 2006 WL 751309 (Mar. 21, 2006) (dkt. no. 36), recons. denied, 2006

WL 1193853 (Apr. 28, 2006) (dkt. no. 42); Sadar Doe v. Bush, No. 05-CV-1704 (JR) (LFO)

(AK) (Memorandum Order dated May 11, 2006) (dkt. no. 33); Said v. Bush, No. 05-CV-2384

(RWR) (AK) (Memorandum Order dated May 23, 2006) (dkt. no. 23), recons. denied, Minute

Order dated May 26, 2006; Kiyemba v. Bush, No. 05-CV-1509 (RMU) (AK) (Memorandum

---

demonstrate the satisfaction of the requirements of next friend standing in this matter.  See infra, § III.  The Protective Order contemplates counsel access to detainees (including privileged mail correspondence and visits to Guantanamo Bay) only in cases properly before the Court.

[7] While the Access Procedures provide that "[r]easonable efforts will be made to accommodate the counsel's request regarding the scheduling of a meeting," that language is embedded in a paragraph dealing solely with logistical arrangements as to the date and timing of otherwise appropriate counsel meetings with represented petitioners.  See Access Procedures § III.D.1.

[8] The relationship between counsel visits and the access procedures in this case would be analogous to other cases in which an omnibus protective order is entered at the outset of the case governing the use and handling of information that will be exchanged between parties in discovery.  The omnibus protective order may set the terms of how information obtained in discovery is to be treated, shared, or stored, for example, but a party's entitlement to any particular requested discovery is settled through court process (e.g., a motion to compel) and not through the protective order.  Thus, an omnibus protective order operates with the assumption that discovery will occur, but typically does not by its own terms obligate the parties to produce any particular information.

Order dated June 29, 2006) (dkt. no. 60); see also Razakah v. Bush, No. 05-CV-2370 (EGS) (Order dated May 18, 2006) (dkt. no. 23).  Respondents have noted the grave jurisdictional issues presented by the Magistrate Judge's interpretation of the Protective Order, as well as the inconsistency of that interpretation with the language, history and context of the Protective Order in the Guantanamo habeas cases, see e.g., Respondents' Motion for Stay and Reconsideration of Magistrate Judge's Order and Opinion Docketed on March 21, 2006 in Adem v. Bush, No. 05-CV-0723 (RWR) (dkt. nos. 38, 39); Respondents' Motion for Stay and Reconsideration of Magistrate Judge's May 11, 2006 Memorandum Order in Sadar Doe v. Bush, No. 05-CV-1704 (JR) (dkt. nos. 34, 35) (copy attached hereto as Exhibit A, in two parts, and incorporated herein). The Magistrate Judge, however, has brushed aside respondents' objections and granted counsel access in such circumstances, characterizing his action merely as enforcement of the terms of the previously entered Protective Order in the case, which, according to the Magistrate Judge, is unaffected by jurisdictional considerations.  See, e.g., Adem, 2006 WL 751309, *8-*11.  This Court should not interpret the Protective Order in this case in a fashion that will raise or purport to sidestep the serious jurisdictional issues related to the Detainee Treatment Act, next friend standing and other matters, and the interpretive issues raised by respondents.  See Steel Co., 523 U.S. at 94 ("Without jurisdiction [a] court cannot proceed at all in any cause.").

## III.    Petitioners Should Be Required To Establish Proper "Next Friend" Standing and Satisfy the Requirements of the Protective Order.

Even beyond the Act's investment of exclusive jurisdiction over this action in the Court of Appeals, given that petitioners are not entitled to have access to detainees until the requirements of the Protective Order are satisfied, the Court should order petitioners to

demonstrate that the petition filed on behalf of petitioners Ali and Thabid has been filed through

a next friend meeting standing requirements articulated by the Supreme Court.[9]

It is well-established that "before a federal court can consider the merits of a legal claim,

the person seeking to invoke the jurisdiction of the court must establish the requisite standing to

sue" under Article III of the Constitution. Whitmore, 495 U.S. at 154.  The standing doctrine

"ensure[s] that the plaintiff has a sufficient personal stake in the outcome of a dispute to render

judicial resolution of it appropriate in a society that takes seriously both the idea of separation of

powers and, more fundamentally, the system of democratic self-government that such separation

serves." Hamdi v. Rumsfeld, 294 F.3d 598, 602-03 (4th Cir. 2002) (citation and internal

quotations omitted).[10]  "In essence, the question of standing is whether the litigant is entitled to

have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S.

490, 498 (1975).  A habeas petitioner has proper standing only if the petition is "signed and

verified by the person for whose relief it is intended or by someone acting in his behalf." 28

U.S.C. § 2242.  If a petition is brought by someone acting on behalf of the person for whose

relief the petition is intended, this "next friend" does not become a party to the action, but

---

[9] While petitioners' counsel appear to argue at points that the petition in this case was directly authorized by petitioners, in fact, the petition is brought through putative next friends. See Petition, App. A (dkt. no. 1).

[10] The cited 2002 decision of the Fourth Circuit in Hamdi ordered dismissal of a habeas case that a public defender and private citizen brought as purported next friends of Hamdi despite having no relationship with him.  That deficiency was cured when Hamdi's father filed a legitimate next-friend petition bearing the same style, which eventually culminated in the 2004 decision of the Supreme Court in Hamdi v. Rumsfeld, 124 S. Ct. 2633 (2004).  See Hamdi, 294 F.3d at 600 n.1, 606-07 & n.4; see also Hamdi, 124 S. Ct. at 2636.  Of course, neither the fact that the defect was cured, nor the Supreme Court's ultimate decision in the properly filed habeas case, undermines or casts doubt on the Fourth Circuit's holdings concerning next friend standing in the defective case brought by the public defender and private citizen.

"simply pursues the cause on behalf of the detained person, who remains the real party in interest." Whitmore, 495 U.S. at 163.

The next friend device is not, as petitioners argue, either "superfluous" or a "legal fiction." Further, next friend standing is not automatically granted to anyone who seeks to pursue an action on behalf of another person, however. See Whitmore, 495 U.S. at 163. Rather, consistent with the constitutional limits established by Article III, a litigant who asserts next friend standing bears the burden of satisfying the "two firmly rooted prerequisites" for next friend status articulated by the Supreme Court in Whitmore:

> First, a "next friend" must provide an adequate explanation — such as inaccessibility, mental incompetence, or other disability — why the real party in interest cannot appear on his own behalf to prosecute the action. Second, the "next friend" must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a "next friend" must have some significant relationship with the real party in interest.

Id. at 163-64 (internal citations omitted).

The petition filed on behalf of Thabid and Ali in the above-captioned case does not meet either prong of the Whitmore test. First, petitioners have failed to demonstrate that the detainees for whom habeas relief is sought cannot submit a petition on their own behalf. As explained in the Declaration of Frank Sweigart, the Department of Defense ("DoD") has notified each detainee at Guantanamo Bay of his right to file a petition for habeas corpus, and has provided each detainee with the address of the United States District Court in the event that he desires to submit his own petition to the Court.[11] See (Second) Sweigart Declaration, ¶¶ 3-5 (attached

---

[11] Detainees are afforded the opportunity regularly to send and receive mail through the mail system administered by DoD and through the International Committee for the Red Cross.

hereto as Exhibit B). As a result of these notifications, 58 pro se petitions for writ of habeas

corpus have already been filed with the Court.[12] Furthermore, DoD has taken affirmative steps to

facilitate legal representation for detainees who have indicated a desire to challenge the legality

of their detention by providing such detainees with a form to complete and mail to the American

Bar Association ("ABA"), which has agreed to recruit volunteer counsel for detainees desiring

---

Detainees are supplied pens, paper and envelopes regularly, and mail privileges cannot be
revoked. See Sweigart Declaration, Ex. D.

[12] As of September 19, 2005, the date that the Sweigart Declaration was executed, there
were 55 *pro se* petitions filed with the Court. See Khiali-Gul v. Bush, No. 05-CV-0877 (JR);
Rahmattulah v. Bush, No. 05-CV-0878 (CKK); Mohammad v. Bush, No. 05-CV-0879 (RBW);
Nasrat v. Bush, No. 05-CV-0880 (ESH); Slahi v. Bush, No. 05-CV-0881 (JR); Rahman v. Bush,
No. 05-CV-0882 (GK); Bostan v. Bush, No. 05-CV-0883 (RBW); Muhibullah v. Bush, No. 05-
CV-0884 (RMC); Mohammad v. Bush, No. 05-CV-0885 (GK); Wahab v. Bush, No. 05-CV-
0886 (EGS); Chaman v. Bush, No. 05-CV-0887 (RWR); Gul v. Bush, No. 05-CV-0888 (CKK);
Basardh v. Bush, No. 05-CV-0889 (ESH); Khan v. Bush, No. 05-CV-0890 (RMC); Nasrullah v.
Bush, No. 05-CV-0891 (RBW); Shaaban v. Bush, No. 05-CV-0892 (CKK); Sohail v. Bush, No.
05-CV-0993 (RMU); Tohirjanovich v. Bush, No. 05-CV-0994 (JDB); Slahi v. Bush, No. 05-CV-
0995 (JR); Mohammad v. Bush, No. 05-CV-0996 (JR); Khudaidad v. Bush, No. 05-CV-0997
(PLF); Al Karim v. Bush, No. 05-CV-0998 (RMU); Al-Khalaqi v. Bush, No. 05-CV-0999
(RBW); Sarajuddin v. Bush, No. 05-CV-1000 (PLF); Kahn v. Bush, No. 05-CV-1001 (ESH);
Mohammed v. Bush, No. 05-CV-1002 (EGS); Mangut v. Bush, No. 05-CV-1008 (JDB); Hamad
v. Bush, No. 05-CV-1009 (JDB); Khan v. Bush, No. 05-CV-1010 (RJL); Zuhoor v. Bush, No.
05-CV-1011 (JR); Ali Shah v. Bush, No. 05-CV-1012 (ESH); Salaam v. Bush, No. 05-CV-1013
(JDB); Mammar v. Bush, No. 05-CV-1233 (RCL); Ahmed v. Bush, No. 05-CV-1234 (EGS);
Baqi v. Bush, No. 05-CV-1235 (PLF); Abdulzaher v. Bush, No. 05-CV-1236 (RWR); Aminullah
v. Bush, No. 05-CV-1237 (ESH); Ghalib v. Bush, No. 05-CV-1238 (CKK); Al Khaiy v. Bush,
No. 05-CV-1239 (RJL); Altaiy v. Bush, No. 05-CV-1240 (RCL); Bukhari v. Bush, No. 05-CV-
1241 (RMC); Pirzai v. Bush, No. 05-CV-1242 (RCL); Peerzai v. Bush, No. 05-CV-1243 (RCL);
Alsawam v. Bush, No. 05-CV-1244 (CKK); Mohammadi v. Bush, No. 05-CV-1246 (RWR); Al
Ginco v. Bush, No. 05-CV-1310 (RJL); Ullah v. Bush, No. 05-CV-1311 (RCL); Al Bihani v.
Bush, No. 05-CV-1312 (RJL); Sadkhan v. Bush, No. 05-CV-1487 (RMC); Faizullah v. Bush,
No. 05-CV-1489 (RMU); Faraj v. Bush, No. 05-CV-1490 (PLF); Khan v. Bush, No. 05-CV-1491
(JR); Ahmad v. Bush, No. 05-CV-1492 (RCL); Amon v. Bush, No. 05-CV-1493 (RBW); Idris v.
Bush, No. 05-CV-1555 (JR). Since that date, three additional *pro se* petitions have been filed.
See Jamolivich v. Bush, No. 05-CV-2112 (RBW); Feghoul v. Bush, No. 06-CV-0618 (RWR);
Rumi v. Bush, No. 06-CV-0619 (RJL).

representation. See id., ¶ 7. In addition, all detainees at Guantanamo Bay have the ability to send

and receive mail, allowing them to contact family and friends, see id., Ex. D; supra, note 8, and

they have been informed of the option of contacting friends and family to have them file habeas

petitions on their behalf.

Given that all detainees have been notified of their right to submit petitions for writ of

habeas corpus; that they have the ongoing opportunity to send mail to family, friends, and the

Court; and that the ABA has agreed to offer the detainees assistance in securing legal

representation, it cannot simply be assumed that the detainee for whom habeas relief is sought

cannot submit petitions on their own behalf. The next friend petition in this case, however, does

just that. See, e.g., Petition, ¶¶ 4, 6. See also Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order

dated May 24, 2005) (dkt. no. 12) ("The petition presumes, rather than demonstrates through

facts, that Ahmed has been denied access to the courts of the United States. . . . In light of the

fact that several pro se petitions have been filed recently by Guantanamo Bay detainees, Ahmed's

lack of access to this court cannot be presumed, but must be established.");[13] Hamlily v. Bush,

---

[13] The issue of next friend standing was raised sua sponte by Judge Roberts in Ahmed v. Bush, No. 05-CV-0665 (RWR), another Guantanamo Bay detainee case. Based on an observation that the petition presented scant facts demonstrating that the Whitmore requirements were satisfied, Judge Roberts ordered petitioners to file a memorandum and supporting materials tending to demonstrate that the detainee who purported to act as next friend in that case should be granted next friend standing. See Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12). Petitioners filed a memorandum in response to the Court's Order, in an attempt to demonstrate that both prongs of the Whitmore test were satisfied. See Ahmed v. Bush, No. 05-CV-0665 (RWR) (dkt. no. 13). Although respondents filed a response to petitioners' memorandum indicating that they took no position on petitioners' memorandum at that time, see Ahmed v. Bush, No. 05-CV-0665 (RWR) (dkt. no. 14), and the Court in that case did not issue any subsequent ruling on the issue, respondents now seek to challenge next friend standing in certain recently-filed Guantanamo Bay detainee cases in which the appropriate next friend standing requirements have not been satisfied.

No. 05-CV-0763 (JDB) (Order dated October 3, 2005) (dkt. no. 16) ("[The petition] states only that [Hamlily] is 'being held essentially incommunicado' and that 'his family members have not been able to contact U.S. counsel to file a petition on his behalf.' . . . There is a serious question as to whether this alone is sufficient to establish Hamlily's inability to prosecute this action on his own behalf.");[14] Ahmed Doe v. Bush, No. 05-1458 (ESH), et al., (Order dated November 4, 2005) (dkt. no. 10) (Oberdorfer, J.) ("Petitioners do not explain why the detainees that they purport to represent as next friends are in a materially different position than the detainees who have filed petitions with this Court.").

Absent evidence that Ali and Thabid cannot submit a petition on their own behalf, petitioners cannot demonstrate proper next friend standing, and the Court cannot exercise jurisdiction over the petition.  See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) ("It is a long-settled principle that standing cannot be 'inferred argumentatively from averments in the pleadings,' but rather 'must affirmatively appear in the record.'") (citations omitted). Notably, the putative next friend authorizations by Messrs. Kabir (Petition, App. A.) and Qassim (Petrs' Motion, Ex. 4) in this case do not explain why petitioners cannot avail themselves of the

---

[14]  On October 31, 2005, Judge Bates discharged the order to show cause regarding next friend standing that he entered *sua sponte* in Hamlily v. Bush based on counsel's showing that the detainee in that case directly requested legal representation and authorized counsel's filing of the petition.  See Order dated October 31, 2005 in Hamlily v. Bush, No. 05-CV-0763 (JDB) (dkt. no. 19) (discharging order to show cause and dismissing next friend petitioner in the case). Judge Bates noted, however, that "counsel's filing fail[ed] to address several of the serious deficiencies in next friend standing" raised in the Court's order to show cause.  See id. at 2.

opportunities provided by the Department of Defense for detainees to contact the Court or

counsel directly.[15]

The purported "next friend" in this case, Mr. Kabir, has also failed to satisfy the second

requirement of the Whitmore test — he has not established that he has a "significant

relationship" with the detainee on whose behalf habeas relief is sought such that he is "truly

dedicated to [his] best interests." See Whitmore, 495 U.S. at 163-64.[16] The requirement of a

---

[15] Contrary to the assertions of petitioners' counsel, respondents never represented that just any supplemental next friend authorization would satisfy respondents' concerns. See Petrs' Motion at 7. Indeed, any supplemental next friend authorization would necessarily have to satisfy the Whitmore requirements to be acceptable. The supplemental next friend authorization by Mr. Qassim does not meet these requirements.

[16] The majority of Circuits that have been confronted with the issue have construed Whitmore to require a "significant relationship" as part of the second prong of the test for next friend standing. See Hamdi v. Rumsfeld, 294 F.3d 598, 604 (4th Cir. 2002) ("Whitmore is thus most faithfully understood as requiring a would-be next friend to have a significant relationship with the real party in interest."); Coalition of Clergy, Lawyers, and Professors v. Bush, 310 F.3d 1153, 1162 (9th Cir. 2002) ("Combining the 'significant relationship' requirement, however, with the 'dedicated to best interests' consideration . . . meets the concerns the Whitmore Court addressed."); T.W. v. Brophy, 124 F.3d 893, 897 (7th Cir. 1997) ("It follows, as the Court suggested in the Whitmore case, that not just anyone who expresses an interest in the subject matter of a suit is eligible to be the plaintiff's next friend – that he 'must have some significant relationship with the real party in interest'"); Amerson v. Iowa, 59 F.3d 92, 93 n.3 (8th Cir. 1995) (under Whitmore, the "next friend has [the] burden to establish . . . that she has some "significant relationship with [the] real party in interest"); Zettlemoyer v. Horn, 53 F.3d 24, 27 n.4 (3d Cir. 1995) (observing that "[t]he Whitmore Court also . . . suggested that the party 'must have some significant relationship with the real party in interest'"). See also Al Odah v. Bush, 321 F.3d 1134, 1138 (D.C. Cir. 2003), rev'd on other grounds, Rasul v. Bush, 542 U.S. 466 (2004) (stating that the family members of Guantanamo detainees who filed habeas petitions on their behalf "demonstrated through affidavits that they are 'truly dedicated to the best interests of these individuals,' [and] that they have a 'significant relationship' with the detainees . . .") (citing Whitmore, 495 U.S. at 163-64). Although the Eleventh Circuit questioned whether Whitmore established "some significant relationship" as an independent requirement, it nevertheless noted the importance of a relationship in demonstrating whether a putative next friend "can show true dedication to the best interests of the person on whose behalf he seeks to litigate." Sanchez-Velasco v. Secretary of the Dep't of Corrections, 287 F.3d 1015, 1026-27 (11th Cir. 2002). See also Centobie v. Campbell, 407 F.3d 1149, 1151 (11th Cir. 2005) ("We conclude that Puzone is

"significant relationship" with the real party in interest is necessary to ensure that a next friend will genuinely pursue the interests of the person in custody (who at all times remains the real party in interest) and will not (1) merely use the litigation as a vehicle for advancing his own agenda or (2) assume he or she is in tune with the real party's desires and interests. See id. at 164 (cautioning against "intruders or uninvited meddlers" filing lawsuits on behalf of unwitting strangers).

Thus, under the "significant relationship" requirement, courts have generally limited next friend standing to close relatives such as parents, siblings, and spouses. See, e.g., Vargas v. Lambert, 159 F.3d 1161, 1168 (9th Cir. 1998) (mother); Hamdi, 294 F.3d at 600 n.1 (father); Smith ex rel. Missouri Pub. Defender Comm'n v. Armontrout, 812 F.2d 1050 (8th Cir. 1987) (brother); In re Ferrens, No. 4746, 8 F. Cas. 1158, 1159 (S.D.N.Y. 1869) (wife). Attorneys who have previously represented an individual seeking habeas corpus have also been permitted to act as next friends based on that pre-existing relationship. See Sanchez-Velasco, 287 F.3d at 1026 ("'[S]ome significant relationship' does exist when the would-be next friend has served in a prior proceeding as counsel for the real party in interest and did so with his consent."). Distant relatives or simple acquaintances generally do not have a sufficient relationship to establish next friend standing, see, e.g., Davis v. Austin, 492 F. Supp. 273, 274-76 (N.D. Ga. 1980) (neither detainee's first cousin nor a minister who had counseled detainee could sue as next friend) (cited with approval in Whitmore, 495 U.S. at 164), and petitions filed by total strangers purporting to act as next friends are typically dismissed for lack of jurisdiction. See, e.g., Hamdi, 294 F.3d at

---

not 'truly dedicated to the best interests of the person on whose behalf [s]he seeks to litigate,' and she does not have 'some significant relationship with the party in interest.'") (citing Hauser v. Moore, 223 F.3d 1316, 1322 (11th Cir. 2000)).

603-07 (dismissing petitions brought by a public defender and private citizen who had no relationship to the detainee).

In the above-captioned case, the putative next friend Kabir has failed to demonstrate that he has any sort of "significant relationship" with Ali or Thabid, the detainees for whom habeas relief is sought. The "authorization" submitted in support of Mr. Kabir's next friend status states simply that he is acting as a "close friend" to a list of nearly three dozen detainees. See Petition, App. A. The authorization further provides only names, nationalities, and camp locations where these individuals were purportedly detained at one time. See id. The dearth of basic biographical and personal information about the detainees on whose behalf habeas relief is sought indicates that Kabir does not share any meaningful relationship with these detainees and, therefore, cannot be determined to be acting in their best interests.[17] Because even acquaintances cannot satisfy the requirement of a significant relationship under Whitmore, and the minimal information presented in the petition indicates that the purported next friend merely knows of Ali and Thabid or, at best, is mere acquaintances with him, Mr. Kabir has failed to demonstrate that he is "truly dedicated to [Abdal Razak Ali's] best interests." Whitmore, 495 U.S. at 163. Absent proof that evidences a

---

[17] If a detainee were able to act as next friend for another detainee simply based on the mere fact that they are both detained at Guantanamo, detainees or prisoners could purport to bring mass habeas corpus petitions simply by being able to list the identities of those detained alongside them, a situation that is surely inconsistent with standing jurisprudence. See Othman v. Bush, No. 05-CV-2088 (RWR) (dkt. no. 2) ("The petition's characterization of Al Wahab as Othman's "companion" is an insufficient showing upon which to make any judgment about Al Wahab's fitness to serve[] as next friend. The companionship may be by dint of mere fortuity of co-location in detention with no more substance to the relationship than that.").

18

significant relationship, petitioners cannot demonstrate proper next friend standing, and the Court cannot exercise jurisdiction over the petition in the above-captioned case.[18]

In sum, the petition filed on behalf of Ali and Thabid in this case fails to satisfy the standing requirements articulated by the Supreme Court in <u>Whitmore</u>.  Jurisdiction must be established and the petition must be properly before the Court before any proceedings may commence.  Notwithstanding the Act's withdrawal of the Court's jurisdiction over this case, if petitioners are unable to demonstrate that the petition was filed by a legitimate next friend, the Court cannot exercise jurisdiction over the petition, and the petition must be dismissed for lack of standing.

<u>**CONCLUSION**</u>

For the reasons stated, the Court should deny petitioners' motion for access to petitioners at this time.  Petitioners should be ordered to satisfy the requirements of the Protective Order prior to being granted access to Ali and Thabid.  Thus, the Court should order petitioners to show cause why the petition should not be dismissed for lack of proper next friend standing.

Dated:  July 31, 2006                    Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

---

[18]  Approximately 200 detainees at Guantanamo Bay have filed petitions for writ of habeas corpus through family members who arguably meet the "significant relationship" requirement.  <u>See</u>, <u>e.g.</u>, <u>Hatim v. Bush</u>, No. 05-CV-1429 (RMU) (filed on behalf of two detainees by their siblings, Fatima Nasser Yahia Abdullah Kussrof and Ali Mohammed Saleh Al-Salahi); <u>Rabbani v. Bush</u>, No. 05-CV-1607 (JR) (filed on behalf of two detainees by their wives, Malika and Fouzia Ahmmed); <u>Sadkhan v. Bush</u>, No. 05-CV-1679 (RJL) (filed on behalf of detainee by his father, Jabbar Sadkhan Al-Sahlani).

DOUGLAS N. LETTER
Terrorism Litigation Counsel

_____/s/ Terry M. Henry_____
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
EDWARD H. WHITE
ROBERT J. KATERBERG
ANDREW I. WARDEN
NICHOLAS J. PATTERSON
MARC A. PEREZ
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents