UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **THABID**, *et al.* | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) ) | No. 1:05-CV-2398 (ESH)(AK) |
| **GEORGE BUSH** *et al.*, | ) ) ) | |
| Respondents. | ) ) ) | |

## MEMORANDUM ORDER

Pending before the Court are Petitioners' Urgent Motion for Access to Counsel, ("Mot.") [15] and Respondents' Opposition ("Opp'n") [16].¹ The Petitioners, Thabid (a/k/a Dawut Abdurehin) and Ali (a/k/a Anvar Hassan) are Chinese Uighur² detainees presently held by the United States Government at the Guantanamo Bay Naval Station. They have been detained

---

¹On November 2, 2005, in recognition of "the need to promote orderly and efficient case management of all *habeas* petitions . . . relating to the rights of [Guantanamo] detainees," Judge Kessler, acting as Chair of the Calendar and Case Management Committee referred all motions "pertaining to interpretation or construction of any protective order" entered in any of the Guantanamo *habeas* cases to the undersigned for resolution pursuant to LCvR 72.2(a). A party may seek reconsideration of a ruling by a magistrate judge within 10 days after being served with the magistrate judge's order. LCvR 72.2(b). Rulings issued by a magistrate judge pursuant to LCvR 72.2 are reviewed by the district court judge, in this case Judge Huvelle, on a "clearly erroneous" or "contrary to law" standard. LCvR 72.2(c).

²Uighurs are a Turkic Muslim ethnic minority that has been, and continues to be, brutally oppressed by the Chinese government. *See* U.S. Dep't of State, Country Reports on Human Rights Practices, China - 2005 (March 8, 2006), *available at* http://www.state.gov/g/drl/rls/hrrpt/2005/61605.htm

without charge and held virtually incommunicado for more than four years.³ Petitioners claim that Respondents have refused to permit them access to counsel as required by the Protective Order ⁴ and several previous court orders granting counsel access under virtually identical circumstances.  Respondents have tentatively scheduled counsel visits for Petitioners during the week of August 7 -11, but refuse to permit Petitioners access to counsel absent court order.  Respondents insist that counsel provide written evidence of their authorization to represent the Petitioner before he will be allowed to meet with a lawyer.   Upon consideration of the Motion and Opposition, Petitioners' Motion is hereby GRANTED.

I.      *Interpretation of the Protective Order*

Under the Protective Order, any counsel who represents a detainee must provide evidence of that representation.  *See* Revised Procedures for Counsel Access, ¶ III.C, *attached as* Exhibit A to the Amended Protective Order.  With respect to the narrow question of the timing of counsel's

---

³Most Uighur detainees have been determined to be "No Longer Enemy Combatants," a somewhat euphemistic term, given that these same detainees were never determined to be enemy combatants in the first instance.  *See Kabir v. Bush*, 05-1704, Mem. Order at 2 n.3 (D.D.C. May 11, 2006).  In *Qassim v. Bush*, 05-497 (JR), counsel for other Uighur detainees did not learn that their clients had been determined not to be enemy combatants until after counsel went to Guantanamo and met them, even though Respondents had known of the detainees' innocence for several months.  *See id.*

⁴In recognition of the security concerns attendant to the Guantanamo *habeas* cases, the Protective Order sets procedures that counsel must follow in order to meet and communicate with their clients.  The Protective Order was initially approved and entered by Judge Joyce Hens Green in *In re Guantanamo Cases*, 344 F. Supp. 2d 174 (D.D.C. 2004), following intense negotiation and litigation over its terms.  *See Adem v. Bush*, 425 F. Supp. 2d 7, 10-14 (D.D.C. 2006) (reviewing history of negotiation and entry of Protective Order), *aff'd*, No. 05-723, slip op., 2006 WL 1193853 (D.D.C. April 28, 2006).  It has since been entered in the vast majority of Guantanamo *habeas* cases pending before the District Court, including the instant case.  *See* Minute Order of March 21, 2006.

submission of that evidence, Respondents raise the same objections they previously raised under virtually identical circumstances. This Court has already rejected Respondents' arguments many times over, as have other District Court Judges. *See Adem v. Bush*, 425 F. Supp. 2d 7, 20-23 (D.D.C. 2006), *aff'd*, No. 05-723, 2006 WL 1193853 at *3-7 (D.D.C. April 28, 2006); *Kabir v. Bush*, 05-1704 (D.D.C. May 11, 2006) (memorandum order granting motion to compel counsel access); *Said v. Bush*, 05-2384 (D.D.C. May 23, 2006) (same), *aff'd*, Minute Order of May 26, 2006; *Razakah v. Bush*, 05-2370 (D.D.C. May 18, 2006) (EGS) (order granting motion for access to counsel); *Mohammon v. Bush*, No. 05-2386, Order at 4 n.5, Dkt. No. 66 (D.D.C. June 27, 2006) (RBW) (rejecting government's argument that allegedly defective next friend standing strips court of authority to grant access to counsel).

At this time, the Court sees no basis to depart from its previous rulings. Briefly, a plain reading of the Protective Order clearly dictates that Petitioners' counsel must submit the requisite evidence of authority to represent that detainee within 10 days of counsel's second visit. *See Adem*, 425 F. Supp. 2d at 21-23*; Razakah v. Bush*, 05-2370, Order at 4-5 (EGS) (D.D.C. May 18, 2006). The Protective Order does require counsel for a detainee to take certain steps before they may meet with a detainee-client. Counsel must obtain the necessary security clearances, sign a memorandum of understanding acknowledging counsel's agreement to abide by the terms of the Protective Order, and provide DoD with a "Notification of Representation" that includes counsel's licensing information, business contact information and the name of the detainee being represented by counsel. *See* Revised Procedures for Counsel Access, ¶¶ III.A, B & C.1. The Protective Order does not, however, require a detainee to submit the equivalent of a signed retainer before he may meet with a lawyer. *See Adem*, 2006 WL 1193853, at *7 (D.D.C. April 28,

2006) ("[r]equiring a Guantanamo detainee to identify a specific lawyer from among all the volunteer lawyers -- most of whom are unknown to the detainee before a meeting -- is a meaningless exercise. It would be unconscionable to tether a detainee's access to counsel to such an unworkable prerequisite").

Absent evidence that Petitioners' requests are not genuine, they are entitled to meet with their lawyers, in part so they may obtain the very authorization of representation that Respondents insist be provided prior to any visits. If, within 10 days of counsel's second visit, the requisite evidence is not forthcoming, Respondents motion to dismiss for lack of proper "next friend" standing would then be ripe.

## II.     *Jurisdiction*

Respondents' contention that Section 1005(e)(1) of the Detainee Treatment Act of 2005 (the "DTA") divests federal courts of jurisdiction to hear any *habeas* petition filed by a Guantanamo detainee has been rendered moot by the Supreme Court's decision in *Hamdan v. Rumsfeld*, 126 S. Ct. 2749, 2769 n.15 (2006). Although Respondents concede this point, they now argue that jurisdiction over Petitioners' *habeas* petition is nonetheless barred by the exclusive review provisions of the DTA. (*See* Opp'n at 4-5.)[5]

The Court need not reach the question of whether a *habeas* petition challenging the very legitimacy of the CSRTs and Petitioners' continued detention – questions far beyond the narrow confines of Section 1005(e)(2) – would nevertheless be bundled into the Circuit's exclusive

---

[5]The DTA vests "the District of Columbia Circuit Court of Appeals with exclusive authority to review the validity of any final decision of a Combatant Status Review Tribunal [CSRT] that an alien is properly detained as an enemy combatant." § 1005(e)(2).

jurisdiction when paired with a challenge to a final decision of a CSRT.  *See Hamdan*, 126 S. Ct. at 2769 (finding "nothing absurd about a scheme" that creates two separate systems of review for challenges to detainees' confinement); *id.* at 2815 (Scalia, J., dissenting) (criticizing majority for creating a "dual-review mechanism" for *habeas* petitions pending on the date of the DTA's enactment).  Even prior to the Supreme Court's decision in *Hamdan*, the question of when, and under what circumstances the existing Protective Order permits Petitioners to meet with their lawyers simply had no bearing on the question of which Court has jurisdiction to review the merits of Petitioner's challenge to his detention.  *See Nasrullah v. Bush*, 05-891 (D.D.C. June 12, 2006) (RBW) (rejecting government's argument that the Detainee Treatment Act divested District Court of its authority to appoint counsel to represent Guantanamo Bay detainees); *Al Salami v. Bush*, 05-2452 (D.D.C. April 13, 2006) (PLF) ("[d]etainees' right to meet with counsel under the Protective Order is independent of the (still-unresolved) question of the Court's jurisdiction to rule on their *habeas* petitions").

  Furthermore, Respondents' argument that the DTA had stripped the District Court of authority even to appoint counsel was premised on the validity of Section 1005(e)(1), which purported to strip federal courts of jurisdiction to hear any *habeas* petition brought by an alien detained in Guantanamo.  Respondents argued that because detainees' right to counsel was grounded in the federal *habeas* statutes as described in *Al Odah v. United States*, 346 F. Supp. 2d 1, 5-6 (D.D.C. 2004) (finding entitlement to counsel pursuant to the "the federal habeas statute, 28 U.S.C. § 2241, the Criminal Justice Act, 18 U.S.C. § 3006A, and the All Writs Act, 28 U.S.C. § 1651"), the DTA therefore stripped the District Court of authority to appoint counsel along with its authority to hear any *habeas* petition in the first instance.  (*See* Mot. for Reconsid. at 17-18,

*attached as* Ex. A to Opp'n.)   This argument is now moot in light of the Supreme Court's holding that Section 1005(e)(1) is not retroactive.  *See Hamdan*, 126 S. Ct. at 2762-69.

Finally, it is well-settled that until such time as jurisdiction is determined not to exist, the District Court has the authority to issues such orders as necessary to preserve its own jurisdiction and to maintain the status quo.  *See United States v. United Mine Workers of America*, 330 U.S. 258, 290-93 (1947).  The status quo includes the integrity of the Protective Order, painstakingly negotiated by the parties and approved by the District Court, which remains binding and in effect in those cases in which it has been entered.  "[A] protective order, like any ongoing injunction, is always subject to the inherent power of the district court." *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993); *see also Armstrong v. Executive Office of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (recognizing courts' "inherent power to enforce compliance with their lawful orders"); *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006) (same); *cf. Gambale v. Deutsche Bank, AG*, 377 F.3d 133, 140-41 (2d Cir. 2004) (recognizing court's jurisdiction to modify protective orders that remain in effect, even after dismissal of the underlying litigation); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (same), *cert. denied, Am. Special Risk Ins. Co. v. Rohm & Haas Co.*, 498 U.S. 1073 (1991). It would be untenable for the District Court to be put in a position where it is powerless to enforce its own Protective Order, presently in effect and over which it has continuing control.

Therefore, it is hereby, this _2nd_ day of August, 2006

ORDERED that Respondents shall comply with the Protective Order and allow counsel to meet with the Petitioners during the week of August 7 -11, and it is

FURTHER ORDERED that this Order is without prejudice to Respondents' ability to seek additional relief regarding the issue of Petitioner Ali's identity if, after meeting with counsel, it appears that Petitioner Ali has also filed a duplicate *habeas* petition in *Mohammon v. Bush*, 05-CV-2386 (RBW).

SO ORDERED.

_____/s/_____
ALAN KAY
UNITED STATES MAGISTRATE JUDGE