IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HASSAN ANVAR,                                )
                                             )
                                             )
            Petitioner,                      )
                                             )
      v.                                     )        Civil Action No. 05-2386 (RBW)
                                             )
GEORGE W. BUSH, *et al.*,                    )
                                             )
            Respondents.                     )
_____)

## DECLARATION OF TERESA A. McPALMER

       Pursuant to 28 U.S.C. § 1746, I, Commander Teresa A. McPalmer, Judge Advocate General's Corps,

United States Navy, hereby state that to the best of my knowledge, information, and belief, the following is

true, accurate and correct:

       1.       I am the Legal Advisor to the Office for the Administrative Review of the Detention of

Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC). In that capacity I am an advisor

to the Director, Combatant Status Review Tribunals.

       2.       I hereby certify that the documents attached hereto constitute a true and accurate copy of the

portions of the record of proceedings before the Combatant Status Review Tribunal related to petitioner

Hassan Anvar that are suitable for public release. The portions of the record that are classified or considered

law enforcement sensitive are not attached hereto or were redacted by an OARDEC staff member. This staff

member also redacted information that would personally identify certain U.S. Government personnel in order

to protect the personal privacy and security of those individuals.

       I declare under penalty of perjury that the foregoing is true and correct.

Dated: 8 September 2006

                                             _Teresa A. McPalmer_
                                             Teresa A. McPalmer
                                             CDR, JAGC, U. S. Navy



# Department of Defense
## Director, Combatant Status Review Tribunals

OARDEC/Ser: 0 4 8

2 5 FEB 2005

FOR OFFICIAL USE ONLY

From:  Director, Combatant Status Review Tribunal

Subj:  **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # 250**

Ref:  (a) Deputy Secretary of Defense Order of 7 July 2004
      (b) Secretary of the Navy Order of 29 July 2004

1.  I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN # 250 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2.  This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John B. Wiegmann)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

FOR OFFICIAL USE ONLY

UNCLASSIFIED

8 Feb 05

MEMORANDUM

From:  Legal Advisor
To:    Director, Combatant Status Review Tribunal

Subj:  LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
       FOR DETAINEE ISN # 250

Ref:   (a) Deputy Secretary of Defense Order of 7 July 2004
       (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl:  (1) Appointing Order for Tribunal # 32 of 21 January 2005
       (2) Appointing Order for Tribunal # 18 of 1 November 2004
       (3) Record of Proceedings

1.  Legal sufficiency review has been completed on the subject Combatant Status Review
Tribunal in accordance with references (a) and (b).  After reviewing the record of the Tribunal, I
find that:

    a.  The detainee was properly notified of the Tribunal process and affirmatively declined
    to participate.  The detainee did provide a statement, contained in exhibit D-b of
    enclosure (3) of enclosure (5) of the Tribunal Decision Report.

    b.  The Tribunals were properly convened and constituted by enclosure (1) and enclosure
    (2).

    c.  The Tribunal substantially complied with all provisions of references (a) and (b).
    Note that some information in exhibits R-4, R-6, and R-8 was redacted.  The FBI
    properly certified in exhibit R-2 that the redacted information would not support a
    determination that the detainee is not an enemy combatant.

    d.  On 16 November 2004 a tribunal unanimously determined that the detainee was not
    properly designated as an enemy combatant.  Following that tribunal, CSRT intelligence
    personnel conducted another search of the Government Information for evidence relevant
    to ISN 250's status.  They collected additional evidence which eventually became
    exhibits R-18 through R-29.  Due to the detachment from OARDEC of two of the three
    members of the original tribunal panel, the additional evidence, along with the original
    evidence and original Tribunal Decision Report, was presented to Tribunal panel # 32 to
    reconsider the detainee's status.  (One of the members of the original tribunal sat on the
    new tribunal panel.)  Following their consideration of the new information along with the
    original information, this Tribunal unanimously determined that the detainee was
    properly classified as an enemy combatant.

UNCLASSIFIED

UNCLASSIFIED

Subj:  LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
FOR DETAINEE ISN # 250

I note that Exhibit R-18 contains a troubling statement: "Inconsistencies will not cast a
favorable light on the CSRT process or the work done by OARDEC. This does not
justify making a change in and of itself, but is a filter by which to look at the overall
Uigher transaction since they are all considered the same notwithstanding a specific act."
Fortunately, there is no indication that the Tribunal adopted this inappropriate "one size
fits all" policy.

e.  The detainee did not request that any witnesses or evidence be produced.

f.  The Tribunal's decision that detainee ISN # 250 is properly classified as an enemy
combatant was unanimous.

g.  The detainee affirmatively chose not to participate in the CSRT process but requested
that his Personal Representative make an oral statement to the Tribunal about the
allegations contained in the unclassified summary. A letter from the Personal
Representative initially assigned to represent the detainee at Guantanamo Bay, Cuba,
reflects the detainee's elections and is attached to the Tribunal Decision Report as exhibit
D-b. The original Tribunal proceedings were held *in absentia* outside Guantanamo Bay
with a new Personal Representative who was familiar with the detainee's file. This
Personal Representative had the same access to information and evidence as the Personal
Representative from Guantanamo Bay. The addendum proceedings were conducted with
yet a third Personal Representative because the second Personal Representative had been
transferred to Guantanamo Bay. This Personal Representative also had full access to the
detainee's file and original Personal Representative's pass-down information. The
detainee's Personal Representatives were given the opportunity to review the respective
records of proceedings and both declined to submit post-tribunal comments to the
Tribunal.

2.  The proceedings and decision of the Tribunal, as reflected in enclosure (3), are legally
sufficient and no corrective action is required.

3.  I recommend that the decision of the Tribunal be approved and the case be considered final.

JAMES R. CRISFIELD JR.
CDR, JAGC, USN

2
UNCLASSIFIED



**Department of Defense**
Director, Combatant Status Review Tribunals

21 Jan 05

From:  Director, Combatant Status Review Tribunals

Subj:  APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #32

Ref:   (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal
established by "Implementation of Combatant Status Review Tribunal Procedures for
Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004
is hereby convened. It shall hear such cases as shall be brought before it without further
action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

          **MEMBERS**:

               ████████████, Colonel, U.S. Army; President

               ████████████, Lieutenant Colonel, U.S. Air Force; Member

               ████████████, Lieutenant Commander, JAGC, U.S. Navy;
          Member (JAG)

                                        *J. M. McGarrah*

                                        J. M. McGARRAH
                                        Rear Admiral
                                        Civil Engineer Corps
                                        United States Navy



# Department of Defense
## Director, Combatant Status Review Tribunals

1 Nov 04

From:  Director, Combatant Status Review Tribunals

Subj:  APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #18

Ref:   (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

       **MEMBERS:**

       ███████████████, Colonel, U.S. Air Force; President

       █████████, Lieutenant Colonel, U.S. Air Force; Member

       █████████, Lieutenant Commander, U.S. Navy; Member
       (JAG)

J. M. McGARRAH
Rear Admiral, Civil Engineer Corps
United States Navy

SECRET//NOFORN//X1

## (U) Combatant Status Review Tribunal Decision Report Cover Sheet

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2), (3) and (5).

(U) TRIBUNAL PANEL: ____32____

(U) ISN#: ____250____

Ref:　(a) (U) Convening Order for Tribunal #32 dated 21 January 2005 (U)
　　　(b) (U) CSRT Implementation Directive of 29 July 2004 (U)
　　　(c) (U) DEPSECDEF Memo of 7 July 2004 (U)

Encl:　(1) (U) Unclassified Summary of Basis for Tribunal Decision (U/FOUO)
　　　(2) (U) Classified Summary of Basis for Tribunal Decision (S/NF)
　　　(3) (U) Copies of Documentary Evidence Presented (S/NF)
　　　(4) (U) Personal Representative's Record Review (U/FOUO)
　　　(5) (U) CSRT Decision Report of Tribunal #18 (undated) (S/NF)

1. (U) This Tribunal was convened by references (a) and (b) to make a determination as to whether the detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

2. (U) On 16 November 2004, a previous Tribunal determined, by a preponderance of the evidence, that Detainee #250 was not properly designated as an enemy combatant as defined in reference (c). See enclosure (5). On 25 January 2005, this Tribunal was convened to review additional classified evidence, unavailable to the previous Tribunal, concerning Detainee #250. On 25 January 2005, this Tribunal, upon review of all the evidence, determined that Detainee #250 was properly designated as an enemy combatant as defined in reference (c).

3. (U) In particular, the majority of the Tribunal found that the preponderance of the evidence supports the finding that this detainee was associated with and supported al Qaida and the Taliban, as more fully discussed in the enclosures.

4. (U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).

███████████████████████, Colonel, U.S. Army
Tribunal President

DERV FM: Multiple Sources　　　SECRET//NOFORN//X1
DECLASS: X1

UNCLASSIFIED//~~FOUO~~

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

### (Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: _____#32_____

ISN #: _____250_____

## 1. Introduction

As the Combatant Status Review Tribunal (CSRT) Decision Report indicates, the Tribunal has determined that this detainee is properly classified as an enemy combatant and was associated with and supported al Qaida and the Taliban. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal and other pertinent information. Classified evidence considered by the Tribunal is discussed in Enclosure (2) to the CSRT Decision Report.

## 2. Synopsis of Proceedings

The unclassified summary of evidence presented to the Tribunal by the Recorder indicated that the detainee traveled to Afghanistan for weapon and tactics training, traveling with an illegal passport. The detainee did labor work on the houses while at the Tora Bora training camp after arriving in September of 2001, where he received weapon training on the A-K rifle. He knew that the land where the terrorist training camp was located was donated by the Taliban. The detainee joined the Eastern Turkistan Islamic Movement, which is suspected of having received training and financial assistance from al-Qaida. He provided a false name when captured.

## 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

 a. Exhibits: R-1 through R-29.

 b. Exhibits: D-a and D-b.

 c. There were no witnesses.

UNCLASSIFIED//~~FOUO~~

**UNCLASSIFIED//~~FOUO~~**

**4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses**

The detainee did not request any witnesses or additional evidence; no rulings were required.

**5. Discussion of Unclassified Evidence**

The Tribunal considered the following unclassified evidence in making its determinations:

    a. The recorder offered Exhibit R-1 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence and R-2 is the FBI request for redaction statement. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence.

    b. Since the detainee did not participate in the Tribunal process, the Tribunal relied heavily on classified evidence in reaching its decision. The Tribunal also considered Exhibits D-a and D-b, unclassified information provided by the detainee and is included as part of the Combatant Status Review Tribunal Decision Report. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

**6. Consultations with the CSRT Legal Advisor**

No issues arose during the course of this hearing that required consultation with the CSRT legal advisor.

**7. Conclusions of the Tribunal**

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

    a. The detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed necessary.

    b. The detainee understood the Tribunal proceedings. The Personal Representative (PR) advised the detainee of his rights and read the unclassified summary of the evidence to him. The detainee affirmatively declined to participate in the Tribunal.

    c. The detainee is properly classified as an enemy combatant and was associated with and supported al Qaida.

**UNCLASSIFIED//~~FOUO~~**

UNCLASSIFIED//~~FOUO~~

**8. Dissenting Tribunal Member's report**

None. The Tribunal reached a unanimous decision.

Respectfully submitted,

████████████████████, Colonel, U.S. Army
Tribunal President

UNCLASSIFIED//~~FOUO~~

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

### (Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: _____18____

ISN #: _____250___

## 1. Introduction

As the Combatant Status Review Tribunal (CSRT) Decision Report indicates, the Tribunal has determined that this Detainee is not properly classified as an enemy combatant.   In reaching its conclusions, the Tribunal considered  both classified and unclassified information.  The following is an account of the unclassified evidence considered by the Tribunal and other pertinent information.  Classified evidence considered by the Tribunal is discussed in Enclosure (2) to the CSRT Decision Report.

## 2. Synopsis of Proceedings

The unclassified summary of evidence presented to the Tribunal by the Recorder indicated that the detainee is a member of, or affiliated with the Taliban or al Qaida and participated in military operations against the United States or its coalition partners.  The detainee did not participate in the Tribunal process or request any witness or additional evidence be produced, but did provide a statement (see exhibit D-b).

## 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

    a.  Exhibits:  D-a through D-b and R-1 through R-17.

    b.  There were no witnesses.

    c.  The Detainee provided a statement to the Personal Representative (see exhibit D-b).

## 4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses

There were no witness or additional evidence requests.

## 5. Discussion of Unclassified Evidence

The Tribunal considered the following unclassified evidence in making its determinations:

UNCLASSIFIED//~~FOUO~~

**UNCLASSIFIED//~~FOUO~~**

a. The recorder offered Exhibits R-1, R-2 and R-3 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Exhibit R-2 is a FBI request for redaction of national security information, and provided no usable evidence. Exhibit R-3 is the Department of Homeland Security Terrorist Organization Reference Guide, which classifies the Eastern Turkistan Islamic Movement (ETIM) as an Islamic extremist group. The Tribunal found this document to be persuasive in a determination of the status of ETIM but not persuasive in supporting classification of the Detainee as an enemy combatant. Accordingly, the Tribunal looked to classified exhibits for support of the Unclassified Summary of Evidence.

b. In his statement, the Detainee admitted leaving China and entering Afghanistan for weapons training, but maintains his intent was to fight the Chinese government. He maintains he was not involved with the ETIM and denies knowledge of ETIM's association with al Qaida. He maintains his passport was legal. He admits to attending the Uighur training camp in Afghanistan and improving housing there but maintains this was only to improve living conditions for the Uighurs. He admits to training with the AK rifle while at the camp, but denies shooting at anything but targets. He denies being aware that the Uighur camp was donated by the Taliban. He admits he used a false name when arrested but maintains he did so to avoid being deported to China, where he fears he would be tortured and executed. See Exhibit D-b.

c. The Tribunal found the Detainee's denial of involvement with the Taliban, al Qaida, or ETIM, in the face of possible return to his home country (where he could be tortured and executed), to be sincere and genuine. The Tribunal considered the fact that the Detainee did not make this statement under oath nor appear before the Tribunal, and weighed the evidence accordingly.

d. In reviewing the evidence, the Tribunal was guided by Paragraph G-11 of the Implementing Directive (Reference (b)), and assigned a rebuttable presumption of genuineness and accuracy to the Government evidence. Even viewed in this light, a preponderance of the evidence does not support the Detainee's classification as an enemy combatant. The majority of the evidence is consistent with the Detainee's explanation as to his presence and activities in Afghanistan, and very little evidence, if any, was presented to refute or discredit his explanations.

e. The Tribunal also relied on certain classified evidence in reaching its decision. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

**6. Consultations with the CSRT Legal Advisor**

**UNCLASSIFIED//~~FOUO~~**

UNCLASSIFIED//~~FOUO~~

No issues arose during the course of this hearing that required consultation with the CSRT legal advisor.

## 7. Conclusions of the Tribunal

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

    a. The Detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed necessary.

    b. The Detainee understood the Tribunal proceedings. The Personal Representative (PR) advised the detainee of his rights and read the unclassified summary of the evidence to him. The detainee affirmatively declined to participate in the hearing, with the exception of the statement provided in Exhibit D-b.

    c. The Detainee is not properly classified as an enemy combatant.

## 8. Dissenting Tribunal Member's report

None. The Tribunal reached a unanimous decision.

Respectfully submitted,

[signature redacted]

Colonel, U.S. Air Force
Tribunal President

UNCLASSIFIED//~~FOUO~~

~~SECRET//NOFORN//X1~~

## (U) Combatant Status Review Tribunal Decision Report Cover Sheet

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (3).

(U) TRIBUNAL PANEL: ___18___

(U) ISN#: ___250___

Ref:    (a) (U) Convening Order for Tribunal #18 dated 1 November 2004 (U)
       (b) (U) CSRT Implementation Directive of 29 July 2004 (U)
       (c) (U) DEPSECDEF Memo of 7 July 2004 (U)

Encl:    (1) (U) Unclassified Summary of Basis for Tribunal Decision (U/~~FOUO~~)
       (2) (U) Classified Summary of Basis for Tribunal Decision (S/NF)
       (3) (U) Copies of Documentary Evidence Presented (S/NF)
       (4) (U) Personal Representative's Record Review (U/~~FOUO~~)

1. (U) This Tribunal was convened by references (a) and (b) to make a determination as to whether the detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

2. (U) On 16 November 2004 the Tribunal determined, by a preponderance of the evidence, that Detainee #250 is not properly designated as an enemy combatant as defined in reference (c).

3. (U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).



, COl, USAF

Tribunal President

DERV FM: Multiple Sources
DECLASS: X1

~~SECRET//NOFORN//X1~~

UNCLASSIFIED//~~FOUO~~

# DETAINEE ELECTION FORM

**Date:** ___12 Nov 2004___

**Start Time:** ___0830 hrs___

**End Time:** ___1000 hrs___

**ISN#:** ___250___

**Personal Representative:** MAJOR ██████████
(Name/Rank)

**Translator Required?** YES          **Language?** Uighur

**CSRT Procedure Read to Detainee or Written Copy Read by Detainee?** YES

------------------------------------------------------------------------

## Detainee Election:

☐     **Wants to Participate in Tribunal**

☒     **Affirmatively Declines to Participate in Tribunal**

☐     **Uncooperative or Unresponsive**

## Personal Representative Comments:

Does not want to participate, but provided a statement to each of the allegations.

Witnesses Requested : 0

Follow-up Required:  No

Personal Representative: ████████████████████

Exhibit <u>D-a</u>

An initial interview was held with detainee _____ANVAR, Hassan____ (ISN 250) on __12 Nov 2004__ .

_X_ The detainee spoke the language of the linguist and understood the linguist.

_X_ The detainee was reminded that the U.S. government established a Combat Status Review Tribunal to review his designation as an enemy combatant.

_X_ The detainee was advised that I am not an attorney nor his advocate, but will assist him in the CSRT process if he chooses to participate.

_X_ The detainee was advised that a tribunal of military officers will review his enemy combatant designation even if he chooses not to participate.

_X_ The detainee was advised that he will have an opportunity to speak on his own behalf and call witnesses and ask questions of the witnesses and tribunal members.

_X_ The detainee was advised that he may choose not to appear at the Tribunal hearing or participate in the CSRT process, but that I could present information on his behalf.

_X_ The detainee confirmed that he understood the process as explained to him and did not have any questions.

_X_ The detainee affirmatively chose not to participate in the CSRT process but requested that I present the following information on his behalf:

*"We are innocent people and didn't do anything wrong"*

1. The detainee traveled to Afghanistan for weapon and tactics training.

    *"I went to Afghanistan to get weapons training, not tactics training. I went there so I could train to fight against the Chinese, not against the American. I have no reason to fight against the U.S. It doesn't make any sense to fight against the US forces or Coalition forces. The Uighur people are tortured and executed by the Chinese and that is the reason to get training so we can fight back against the Chinese."*

2. The detainee traveled with an illegal passport.

    *"No, not true. My passport was legal. When I left my country, it was a legal passport. Maybe the translator was misunderstood."*

3. The detainee did labor work on the houses while at the Tora Bora training camp.

Exhibit D-b    1/2

*"True. I did some work on the houses in the training camp because we didn't have a bathroom and I helped build one and we were living in these old run down houses so I worked on them to improve our living conditions."*

4.  The detainee arrived at the training camp in September of 2001.

    *"True."*

5.  The detainee received weapon training on the A-K rifle.

    *"Yes, but I shot the rifle only once and only at targets. I only shot 4 or 5 bullets at targets not a people and not in battle."*

6.  The detainee knew that the land where the terrorist training camp was located was donated by the Taliban.

    *"I didn't say that. I didn't know who the camp was associated with. Just that it was a Uighur training camp. I went there because I heard Uighur people were there. Only Uighur people."*

7.  The detainee joined the Eastern Turkistan Islamic Movement.

    *"I don't know what the Eastern Turkish Islamic Movement is until I got here and heard it here. I was not part of this organization, ever."*

8.  Eastern Turkistan Islamic Movement is suspected of having received training and financial assistance from al-Qaida.

    *"I don't know anything about this. I don't know who gave the money for the training."*

9.  The detainee provided a false name when captured.

    *"True. Because we were afraid that if we gave our real names, they would send us back to China, so we told them false names. If they turned us over to the Chinese, we would have a big problem. If they turned us over to Americans, we would be safe and better so we told them we were Afghanis."*

I affirm that the information above is complete and accurate to the best of my knowledge.

_____, Major, USAF

12 Nov 2004
Date

Exhibt D-b  2/2

UNCLASSIFIED

**Combatant Status Review Board**

TO: Personal Representative

FROM: OIC, CSRT (02 November 2004)

Subject: Summary of Evidence for Combatant Status Review Tribunal – ANVAR, Hassan

1. Under the provisions of the Secretary of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba*, a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2. An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3. The United States Government has previously determined that the detainee is an enemy combatant. This determination is based on information possessed by the United States that indicates that the detainee is associated with the Taliban or al Qaida.

   The detainee is associated with the Taliban or al Qaida:

   1. The detainee traveled to Afghanistan for weapon and tactics training.

   2. The detainee traveled with an illegal passport.

   3. The detainee did labor work on the houses while at the Tora Bora training camp.

   4. The detainee arrived at the training camp in September of 2001.

   5. The detainee received weapon training on the A-K rifle.

   6. The detainee knew that the land where the terrorist training camp was located was donated by the Taliban.

   7. The detainee joined the Eastern Turkistan Islamic Movement.

   8. Eastern Turkistan Islamic Movement is suspected of having received training and financial assistance from al-Qaida.

   9. The detainee provided a false name when captured.

4. The detainee has the opportunity to contest his designation as an enemy combatant. The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant. The Tribunal President will determine the reasonable availability of evidence or witnesses.

UNCLASSIFIED    P. 1/1    Exhibit R-1

## Memorandum



---

To      :    Department of Defense            Date  10/29/2004
             Office of Administrative Review
             for Detained Enemy Combatants
             Capt. Charles Jamison, OIC, CSRT

From  :      FBI GTMO
             Counterterrorism Division
             Asst. Gen. Counsel ████████████

Subject:     REQUEST FOR REDACTION OF
             NATIONAL SECURITY INFORMATION
             ████████████

          Pursuant to the Secretary of the Navy Order of 29 July
2004, Implementation of Combatant Review Tribunal Procedures for
Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba,
Section D, paragraph 2, the FBI requests redaction of the
information herein marked[1].  The FBI makes this request on the
basis that said information relates to the national security of
the United States[2].  Inappropriate dissemination of said
information could damage the national security of the United
States and compromise ongoing FBI investigations.

CERTIFICATION THAT REDACTED INFORMATION DOES NOT SUPPORT A
DETERMINATION THAT THE DETAINEE IS NOT AN ENEMY COMBATANT

          The FBI certifies the aforementioned redaction contains
no information that would support a determination that the
detainee is not an enemy combatant.

          The following documents relative to ISN 250 have been
redacted by the FBI and provided to the OARDEC:

FD-302 dated 05/24/02
FD-302 dated 08/11/02
FD-302 dated 12/06/02

---

    [1]Redactions are blackened out on the OARDEC provided FBI
document.

    [2]See Executive Order 12958

Memorandum from ▮▮▮▮▮▮ to Capt. Charles Jamison
Re:  REQUEST FOR REDACTION, 10/29/2004


        If you need additional assistance, please contact Asst.
Gen. Counsel ▮▮▮▮▮▮▮▮▮▮▮, or Intelligence Analyst (IA)
▮▮ IA ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Page   2   of   2

UNCLASSIFIED



**U.S. Department of Homeland Security**
**U.S. Customs and Border Protection**
**Office of Border Patrol**

# Terrorist Organization
# Reference Guide

**January 2004**

UNCLASSIFIED    P.1/4  Exhibit R-3

● UNCLASSIFIED ●

43.  Army for the Liberation of Rwanda (ALIR) ................................................ 44
44.  Cambodian Freedom Fighters (CFF) ....................................................... 45
45.  Communist Party of Nepal (Maoist)/ United People's Front ..................... 46
46.  Continuity Irish Republican Army (CIRA) ................................................ 47
47.  Eastern Turkistan Islamic Movement (ETIM) .......................................... 47
48.  First of October Antifascist Resistance Group (GRAPO) ......................... 48
49.  Harakat ul-Jihad-I-Islami (HUJI) ............................................................ 49
50.  Harakat ul-Jihad-I-Islami/Bangladesh (HUJI-B) ..................................... 50
51.  Hizb-I Islami Gulbuddin (HIG) ................................................................ 50
52.  Hizb ul-Mujahedin (HM) ......................................................................... 51
53.  Irish Republican Army (IRA) ................................................................... 52
54.  Islamic Army of Aden (IAA)..................................................................... 53
55.  Islamic International Peacekeeping Brigade (IIPB) .................................. 54
56.  Jamiat ul-Mujahedin (JUM) .................................................................... 55
57.  Japanese Red Army (JRA) ..................................................................... 55
58.  Kumpulan Mujahidin Malaysia (KMM) ..................................................... 56
59.  Libyan Islamic Fighting Group ................................................................ 57
60.  Lord's Resistance Army (LRA).................................................................. 58
61.  Loyalist Volunteer Force (LVF) ............................................................... 58
62.  Moroccan Islamic Combatant Group (GICM) .......................................... 59
63.  New Red Brigades/Communist Combatant Party (BR/PCC) ................... 60
64.  People Against Gangsterism and Drugs (PAGAD) .................................. 61
65.  Red Hand Defenders (RHD) ................................................................... 62
66.  Revolutionary Proletarian Initiative Nuclei (NIPR) .................................. 62
67.  Revolutionary United Front (RUF) ........................................................... 63
68.  Riyadus-Salikhin Reconnaissance and Sabotage Battalion of Chechen Martyrs  64
69.  Sipah-I-Sahaba/Pakistan (SSP) .............................................................. 65
70.  Special Purpose Islamic Regiment (SPIR) .............................................. 65
71.  The Tunisian Combatant Group (TCG) .................................................... 66
72.  Tupac Amaru Revolutionary Movement (MRTA) ..................................... 67
73.  Turkish Hizballah ................................................................................... 68
74.  Ulster Defense Association/Ulster Freedom Fighters (UDA/UFF) ........... 68

Terrorist Exclusion List.................................................................................. 71

Mexican Insurgent/Guerrilla Organizations..................................................... 77

End Notes...................................................................................................... 84

R 2/4

UNCLASSIFIED



## 46.   Continuity Irish Republican Army (CIRA)

**Description**

Terrorist splinter group formed in 1994 as the clandestine armed wing of Republican Sinn Fein (RSF), which split from Sinn Fein in 1986. "Continuity" refers to the group's belief that it is carrying on the original IRA goal of forcing the British out of Northern Ireland. Cooperates with the larger Real IRA.

**Activities**

CIRA has been active in Belfast and the border areas of Northern Ireland where it has carried out bombings, assassinations, kidnappings, hijackings, extortions, and robberies. On occasion, it has provided advance warning to police of its attacks. Targets include British military, Northern Ireland security targets, and loyalist paramilitary groups. Unlike the Provisional IRA, CIRA is not observing a cease-fire. CIRA continued its bombing campaign in 2002 with an explosion at a Belfast police training college in April and a bombing in July at the estate of a Policing Board member; other CIRA bombing attempts in the center of Belfast were thwarted by police.

**Strength**

Fewer than 50 hard-core activists. Eleven CIRA members have been convicted of criminal charges and others are awaiting trial. Police counterterrorist operations have reduced the group's strength, but CIRA has been able to reconstitute its membership through active recruiting efforts.

**Location/Area of Operation**

Northern Ireland, Irish Republic. Does not have an established presence on the UK mainland.

**External Aid**

Suspected of receiving funds and arms from sympathizers in the United States. May have acquired arms and materiel from the Balkans in cooperation with the Real IRA.

## 47.   Eastern Turkistan Islamic Movement (ETIM)

**Description**

The Eastern Turkistan Islamic Movement (ETIM), a small Islamic extremist group based in China's western Xinjiang Province, is one of the most militant of the ethnic Uighur separatist groups pursuing an independent "Eastern Turkistan," which would include Turkey, Kazakhstan, Kyrgyzstan, Pakistan, Afghanistan, and Xinjiang. ETIM and other

47

P. 3/4

UNCLASSIFIED



overlapping militant Uighur groups are linked to the international mujahidin movement - and to a limited degree al-Qaeda - beginning with the participation of ethnic Uighur mujahidin in the Soviet/Afghan war.

**Activities**

US and Chinese Government information suggests ETIM was responsible for terrorist acts inside and outside China. Most recently, in May 2002, two ETIM members were deported to China from Kyrgyzstan for plotting to attack the US Embassy in Kyrgyzstan as well as other US interests abroad.

**Strength**

Unknown. Only a small minority of ethnic Uighurs supports the Xinjiang independence movement or the formation of an East Turkistan.

**Location/Area of Operation**

Xinjiang Province and neighboring countries in the region.

**External Aid**

ETIM is suspected of having received training and financial assistance from al-Qaeda.

---

### 48.    First of October Antifascist Resistance Group (GRAPO)

**a.k.a. Grupo de Resistencia Anti-Fascista Primero de Octubre**

**Description**

Formed in 1975 as the armed wing of the illegal Communist Party of Spain during the Franco era. Advocates the overthrow of the Spanish Government and its replacement with a Marxist-Leninist regime. GRAPO is vehemently anti-US, seeks the removal of all US military forces from Spanish territory, and has conducted and attempted several attacks against US targets since 1977. The group issued a communique following the 11 September attacks in the United States, expressing its satisfaction that "symbols of Primero de Octubre imperialist power" were decimated and affirming that "the war" has only just begun.

**Activities**

GRAPO did not mount a successful terrorist attack in 2002. GRAPO has killed more than 90 persons and injured more than 200. The group's operations traditionally have been designed to cause material damage and gain publicity rather than inflict casualties, but the terrorists have conducted lethal bombings and close-range

P. 4/4

UNCLASSIFIED//~~FOUO~~

(U) INFORMATION PAPER

JTF-GTMO-JIG                                         30 October 2004

SUBJECT:  (U) Uighur Detainee Population at JTF-GTMO

1. PURPOSE.  (U) To inform Joint Staff, Office of Detainee Affairs on the Uighur detainees.

    a.  (U) Detainee biographical information.
    b.  (U) Whether any of the Uighurs have recently been interviewed.
    c.  (U) What disciplinary problems occurred over the past year.

2. (U) Specific information on the Uighur detainee population.

| (████) ISN: ████████584DP; NOORI, ADEL | (CURRENT NAME) |
|---|---|
| N/A | (REFERENCE NAME) |

(████) Adel Noori is a 35-year-old ethnic Uighur wanted by the Chinese government for involvement in an uprising that took place in Southern Xinjiang province in 1990. He left Alma Ata, Uzbekistan to train in Afghanistan and return to fight Chinese oppression of ethnic Uighurs. Noori was last interviewed in mid 2004. He has had disciplinary action on 6 October 2004 for failure to comply with guard orders, and on 10 February 2004 that required a forced cell extraction. Noori has a history of spitting and using racial epithets. He has made no physical threats against guards. Noori has been suspected as being a probable member of the East Turkistan Islamic Movement (ETIM). He is suspected of having received training in an ETIM training camp in Afghanistan.

| (████) ISN: ████████102DP; MOHAMMED, NAG | (CURRENT NAME) |
|---|---|
| NAJMEDEEN MOHAMMED | (REFERENCE NAME) |

(████) Nag Mohammed is a 26-year-old Chinese citizen who is an ethnic Uighur from the Xinjiang province of China. Mohammed was last interviewed in mid 2003. He had disciplinary action on 27 May 2003 for spitting, throwing water and body fluids on a guard. Mohammed has had no discipline during this calendar year. Mohammed has been suspected as being a probable member of the East Turkistan Islamic Movement (ETIM). He is suspected of having received training in an ETIM training camp in Afghanistan.

**UNCLASSIFIED//~~FOUO~~**

| (~~FOUO~~) ISN: ████████103DP; MAHMUD, ARKIN | (CURRENT NAME) |
|---|---|
| MAHMUD, ARKINA | (REFERENCE NAME) |

(~~FOUO~~) Arkin Mahmud is a 40-year-old Chinese citizen, who is an ethnic Uighur from the Ghulja province of China. Mahmud was last interviewed in the end of 2002. He had disciplinary action on 4 March 2003 when he participated in a block riot and reportedly threw water, milk, food, body fluids, and feces at guards. Other reports indicate that discipline issues occurred on 5 March 2003 for spitting on a guard's face and neck, 21 April 2003 for spitting on a guard, on 1 September 2004 for threatening to kill an MP and threatening to kill President Bush, and on 4 September 2004 for lunging at a guard with his body and fist. As reported in his discipline history, he refused to return to his bay after a disturbance, threatening bodily harm to the detainees already inside the bay. Mahmud is suspected as being a probable member of the East Turkistan Islamic Movement (ETIM). He is suspected of having received training in an ETIM training camp in Afghanistan.

| (~~FOUO~~) ISN:████████201DP; TOURSON, AHMAD | (CURRENT NAME) |
|---|---|
| N/A | (REFERENCE NAME) |

(~~FOUO~~) Ahmad Tourson is a 33-year-old Chinese citizen, who is an ethnic Uighur from the Xinjiang province of China. He claims that he went to Afghanistan to escape the persecution of the Chinese Government. He was recruited by the Uighur movement and fled China in May 1999. He then traveled to Afghanistan in September 1999. Tourson was last interviewed in mid 2004. He has no reported incidents of violence in his discipline history. Tourson is suspected as being a probable member of the East Turkistan Islamic Movement (ETIM). He is suspected of having received training in an ETIM training camp in Afghanistan.

| (~~FOUO~~) ISN: ████████219DP; RAZAK, ABDUL | (CURRENT NAME) |
|---|---|
| QADIR, ABDAL RAZAK | (REFERENCE NAME) |

(~~FOUO~~) Abdul Razak is a 29-year-old Chinese citizen who is an ethnic Uighur from the Xinjiang province of China. Razak was last interviewed at the end of 2002. He had a disciplinary action on 4 March 2003 for participating in a block riot in which he threw a torn up plate into the walkway and threatened guards. Razak has had no discipline during this calendar year. He is suspected as being a probable member of the East Turkistan Islamic Movement (ETIM). He is suspected of having received training in an ETIM training camp in Afghanistan.

**UNCLASSIFIED//~~FOUO~~**

**UNCLASSIFIED//~~FOUO~~**

---

| (████) ████████250DP; AVNAR, HASSAN (CURRENT NAME) |
| MOHAMMAD, ALI (REFERENCE NAME) |

(████) Hassan Avnar is a 30-year-old Chinese citizen who is an ethnic Uighur from the Tashkuroq Village, Yining, Xinjiang province of China. Avnar was last interviewed at the end of 2002. He has no reported incidents of violence in his discipline history. Avnar is suspected as being a probable member of the East Turkistan Islamic Movement (ETIM). He is suspected of having received training in an ETIM training camp in Afghanistan.

---

| (████) ISN: ████████260DP; ADIL, AHMED (CURRENT NAME) |
| ADIL, AHNAD (REFERENCE NAME) |

(████) Ahmed Adil is a 31-year-old Chinese citizen who is an ethnic Uighur from the Xinjiang province of China. Adil was last interviewed in the end of 2002. He has no reported incidents of violence in his discipline history. Adil is suspected as being a probable member of the East Turkistan Islamic Movement (ETIM). He is suspected of having received training in an ETIM training camp in Afghanistan.

---

| (████) ISN: ████████275DP; ABBAS, YUSEF          (CURRENT NAME) |
| UTHMAN, ABD AL SABR ABD AL HAMID (REFERENCE NAME) |

(████) Yusef Abbas is a 29-year-old Chinese citizen who is an ethnic Uighur from the town of Qarayar or Ghirak in Aksu or Gulja, Xinjiang province of China. He left the Peoples Republic of China in 2001, after being imprisoned twice, and traveled to Jalalabad Afghanistan via Kyrgyzistan and Pakistan. He was last interviewed in mid 2003. He has no reported incidents of violence in his discipline history. Abbas is suspected as being a probable member of the East Turkistan Islamic Movement (ETIM). He is suspected of having received training in an ETIM training camp in Afghanistan.

---

| (████) ISN:████████276DP; BASIT, AKHDAR QASEM (CURRENT NAME) |
| AKHADAR QASEM          (REFERENCE NAME) |

(████) Akhdar Qasem Basit is a 31-year-old Chinese citizen who is an ethnic Uighur from the Ghulja province of China. Basit was last interviewed at the end of 2002. He has no reported incidents of violence in his discipline history. Basit is suspected as being a probable member of the East Turkistan Islamic Movement (ETIM). He is suspected of having received training in an ETIM training camp in Afghanistan.

---

**UNCLASSIFIED//~~FOUO~~**

---

**(FOUO) ISN:** ▓▓▓▓**277DP; MAHNUT, BAHTIYAR**   **(CURRENT NAME)**
                            **SABIT, SADIR**           **(REFERENCE NAME)**

(FOUO) Bahtiyar Mahnut is a 28-year-old Chinese citizen, who is an ethnic Uighur from the Ghalga province of China. Mahnut left China in May 2001 with the goal of reaching a western democracy (America) to live a better life. He was last interviewed in the end of 2002. He had disciplinary action on 4 March 2003 for participating in a riot in which he threw water, milk, food, body fluids, and feces on guards. Sabit is suspected as being a probable member of the East Turkistan Islamic Movement (ETIM). He is suspected of having received training in an ETIM training camp in Afghanistan

---

**(FOUO) ISN:** ▓▓▓▓**278DP; MAMUT, ABDUL HELIL**   **(CURRENT NAME)**
                            **NASIR, ABD AL**         **(REFERENCE NAME)**

(FOUO) Abdul Helil Mamut is a 27-year-old Chinese citizen, who is an ethnic Uighur from Kashkar, China. In 1998 the detainee left China to go to Lahore, Pakistan to get education in order to help other Uighurs to fight the Chinese oppression. He was last interviewed in the end of 2002. He has no reported incidents of violence in his discipline history but has verbally assaulted guards on occasion. Mamut is suspected as being a probable member of the East Turkistan Islamic Movement (ETIM). He is suspected of having received training in an ETIM training camp in Afghanistan

---

**(FOUO) ISN:** ▓▓▓▓**279DP; MOHAMMED, AYOOB HAJI (CURRENT NAME)**
                            **MOHAMMED, AYOOB HAJI (REFERENCE NAME)**

(FOUO) Ayoob Haji Mohammed is a 20-year-old Chinese citizen, who is an ethnic Uighur from Toqquztash, China. He was last interviewed in early 2004. Mohammed has had numerous disciplinary actions. His history indicates he was disciplined on 27 May 2003 for spitting and throwing water and urine on guards, on 18 November 2003 for throwing water and prayer oil on guards, on 5 December 2003 for spitting in a guard's face, on 12 January 04 for throwing feces in a guard's face, on 23 August 2004 for threatening a guard and spitting in the guard's face, on 27 September for throwing a bar of soap at a guard, and on 16 October 04 for threatening to kill a guard. Mohammed is suspected as being a probable member of the East Turkistan Islamic Movement (ETIM). He is suspected of having received training in an ETIM training camp in Afghanistan.

---

**(FOUO) ISN:** ▓▓▓▓**280DP; KHALIK, SAIDULLAH**   **(CURRENT NAME)**
                            **ALI, KHALED**           **(REFERENCE NAME)**

(FOUO) Khalik Saidullah is a 27-year-old ethnic Uighur and a Chinese citizen, born in 1977, in Ghulja, Xinjiang, China. He was last interviewed in mid 2003. He has no reported incidents of violence in his discipline history. Saidullah is suspected as being a probable member of the East Turkistan Islamic Movement (ETIM). He is suspected of having received training in an ETIM training camp in Afghanistan.

**UNCLASSIFIED//~~FOUO~~**

**UNCLASSIFIED//~~FOUO~~**

| (~~FOUO~~) ISN: ████████281DP; ABDUL RAHMAN, ABDUL GHAPPAR (CURRENT NAME) |
|---|
| AL RAHMAN, ABD AL GHATAR ABD (REFERENCE NAME) |

(~~FOUO~~) Abdul Ghappar Abdul Rahman is a 31-year-old Chinese citizen who is an ethnic Uighur from Kucha, China. He was last interviewed in mid 2003. He has no reported incidents of violence in his discipline history. Rahman is suspected as being a probable member of the East Turkistan Islamic Movement (ETIM). He is suspected of having received training in an ETIM training camp in Afghanistan.

| (~~FOUO~~) ISN: ████████282DP; GHUPUR, HAJIAKBAR ABDUL (CURRENT NAME) |
|---|
| GHUPUR, HAJIAKBAR ABDUL (REFERENCE NAME) |

(~~FOUO~~) Hajiakbar Abdul Ghupur is a 30-year-old Chinese citizen who is an ethnic Uighur from the Xinjiang province of China. Ghupur claims to have traveled to Afghanistan in July 2001 to escape Chinese Government treatment of Muslims. He was last interviewed in mid 2003. He has no reported incidents of violence in his discipline history. Ghupur is suspected as being a probable member of the East Turkistan Islamic Movement (ETIM). He is suspected of having received training in an ETIM training camp in Afghanistan.

| (~~FOUO~~) ISN: ████████283DP; QASIM, ABU BAKR | (CURRENT NAME) |
|---|---|
| N/A | (REFERENCE NAME) |

(FOUO) Abu Bakr Qasim is a 35-year-old ethnic Uighur and a Chinese citizen, born in 1969, in Ghulja, China. He claims to have fled China in an effort to escape Chinese oppression of the Uigher people. After fleeing China, the detainee traveled to Afghanistan. He was last interviewed in mid 2004. He has no reported incidents of violence in his discipline history. Qasim is suspected as being a probable member of the East Turkistan Islamic Movement (ETIM). He is suspected of having received training in an ETIM training camp in Afghanistan.

| (~~FOUO~~) ISN: ████████285DP; ABDULQADIRAKHUN, ABDULLAH | (CURRENT NAME) |
|---|---|
| AL RAHMAN, JALLAL ADIN ABD | (REFERENCE NAME) |

(~~FOUO~~) Abdullah Abdulqadirakhun is a 25-year-old Chinese citizen who is an ethnic Uighur from the Xinjiang province of China. He claims to have fled China in 2000 in order to escape the Chinese oppression of the Uighurs. He was last interviewed in mid 2004. He has no reported incidents of violence in his discipline history. Abdulqadirakhun is suspected as being a probable member of the East Turkistan Islamic Movement (ETIM). He is suspected of having received training in an ETIM training camp in Afghanistan.

**UNCLASSIFIED//~~FOUO~~**

**UNCLASSIFIED//~~FOUO~~**

| (~~FOUO~~) ISN: ████████289DP; ABDUREHIM, DAWUT | (CURRENT NAME) |
|---|---|
| YASSIN, SABIT KHAN | (REFERENCE NAME) |

(FOUO) Dawut Abdurehim is a 30-year-old Chinese citizen who is an ethnic Uighur from the Ghulja province of China. Yassin was last interviewed in late 2004. He has no reported incidents of violence in his discipline history. Abdurehim is suspected as being a probable member of the East Turkistan Islamic Movement (ETIM). He is suspected of having received training in an ETIM training camp in Afghanistan.

| (~~FOUO~~) ISN: ████████293DP; ABDULHEHIM, ADEL | (CURRENT NAME) |
|---|---|
| QADIR, MUHAMMAD | (REFERENCE NAME) |

(~~FOUO~~) Adel Abdulhehim is a 30-year-old Chinese citizen who is an ethnic Uighur from the Ghulja province of China. He was last interviewed in the end of 2002. He had disciplinary action on 3 March 2003 for participating in a block riot. Abdulhehim has had no discipline during this calendar year. He is suspected as being a probable member of the East Turkistan Islamic Movement (ETIM). He is suspected of having received training in an ETIM training camp in Afghanistan.

| (~~FOUO~~) ISN: ████████295DP; ABDULAHAT, ENAM | (CURRENT NAME) |
|---|---|
| AL AHAD, ABD AL SAMAD ABD | (REFERENCE NAME) |

(~~FOUO~~) Enam Abdulahat is a 27-year-old Chinese citizen, who is an ethnic Uighur from the Konashahar, China. Abdulahat was last interviewed on 10 August 2004. He had disciplinary action on 6 October 2004 for being in possession of a triangular piece of metal. Abdulahat is suspected as being a probable member of the East Turkistan Islamic Movement (ETIM). He is suspected of having received training in an ETIM training camp in Afghanistan.

| (~~FOUO~~) ISN: ████████320DP; PARHAT, HOZAIFA | (CURRENT NAME) |
|---|---|
| N/A | (REFERENCE NAME) |

(~~FOUO~~) Hozaifa Parhat is a 33-year-old Chinese citizen, who is an ethnic Uighur from the Ghulja province of China. He claims to have fled the Xinjiang province, China to train in Afghanistan and return to fight Chinese oppression of ethnic Uighurs. He was last interviewed in mid 2004. He has no reported incidents of violence in his discipline history. Parhat is suspected as being a probable member of East Turkistan Islamic Movement (ETIM). He is suspected of having received training in an ETIM training camp in Afghanistan.

6 of 7

**UNCLASSIFIED//~~FOUO~~**

| | |
|---|---|
| (~~FOUO~~) ISN: ███████328DP; MOHAMMED, AHMED | (CURRENT NAME) |
| YAQUB, AHMAD MUHAMMAN | (REFERENCE NAME) |

(~~FOUO~~) Ahmed Mohammed is a 26-year-old Chinese citizen, who is an ethnic Uighur from the Artush province of China. He claims to have fled China in 2000 in an effort to escape Chinese oppression of the Uigher community and traveled to Afghanistan. He was last interviewed in late 2004. He has no reported incidents of violence in his discipline history. Mohammed is suspected as being a probable member of East Turkistan Islamic Movement (ETIM). He is suspected of having received training in an ETIM training camp in Afghanistan.

# ombatant Status Review
## Unclassified Document Release Approval
### For ISN 250

**Joint Intelligence Group –**
**Detainee Assessment Branch**

Signature:_____

Name/Rank: ███████████████

Title: OIC- Detainee Assessment Branch

Date: _____

**Joint Intelligence Group**

Signature:_____

Name/Rank: ███████████████

Title: Director, Joint Intelligence Group

Date: _____

**FBI**

Signature: ███████████████

Name/Rank: ███████████████

Title: _Asst. Gen Counsel_

Date: _11-3-00_

**Joint Intelligence Group –**
**Interrogation Control Element**

Signature:_____

Name/Rank: ███████████████

Title: OIC- Interrogation Control Element

Date:_____

**JTF-GTMO, J2**

Signature:_____

Name/Rank: ███████████████

Title: Director of Intelligence JTF GTMO

Date: _____

UNCLASSIFIED//~~FOUO~~

## Personal Representative Review of the Record of Proceedings

I acknowledge that on <u>18</u> November 2004 I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #250.

 I have no comments.

_____ My comments are attached.

Name

Signature

18NOV04

Date

ISN #250
Enclosure (4)

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//FOUO

## Personal Representative Review of the Record of Proceedings

I acknowledge that on _27 JAN 05_ I was provided the opportunity to review the
record of proceedings for the Combatant Status Review Tribunal involving ISN #250.

✓ I have no comments.

___ My comments are attached.

 _MAJ, USAF_
_____
Name

_27 JAN 2005_
_____
Date

_____
Signature

UNCLASSIFIED//FOUO