Approved for filing by the
Court Security Office

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Thabid (aka Dawut Abdurehim)<br>Ali (aka Anvar Hassan)<br><br>Petitioners,<br><br>v.<br><br>GEORGE W. BUSH, et al.,<br>  Respondents. | No. 1:05cv02398 |

**PETITIONERS' RESPONSE AND OPPOSITION TO
RESPONDENTS' MOTION TO DISMISS AND
PETITIONERS' MOTION FOR STAY-AND-ABEY ORDER**

Petitioners respectfully oppose Respondents' Motion to Dismiss, filed April 19, 2007, and also respectfully request that this Court issue an order to stay and abey this habeas petition pending each Petitioners' exhaustion of his remedies in the Supreme Court of the United States (in the case of Petitioner Ali) and in the United States Court of Appeals for the District of Columbia Circuit (in the case of both Petitioner Ali and Petitioner Thabid).

I.    **BACKGROUND.**

On February 13, 2007, Petitioner Ali (aka Anwar Hassan) filed a Petition for Original Writ of Habeas Corpus in the United States Supreme Court (the "Ali Petition"). *In re Ali*, Docket No. 06-1194 (a declassified (redacted) version of the Ali Petition is attached as Exhibit A). The Ali Petition asserts, among other things: (i) that this Court retains habeas corpus jurisdiction over this action notwithstanding

1

the Military Commissions Act of 2006, Pub. L. No. 109-366, § 7, 120 Stat. 2600, 2636 (2006) (the "MCA") and the Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat. 2680, 2739 ("DTA"); and (ii) that Petitioner is not properly classified as an enemy combatant. On March 16, 2007, the Supreme Court ordered Respondents to respond to the Ali Petition. On April 11, 2007, the Supreme Court extended until May 16, 2007 Respondent's time to so respond.

On March 15, 2007, Petitioner Thabid (aka Dawut Abdurehim), along with other similarly situated detainees, filed a petition for review under the DTA in the United States Court of Appeals for the District of Columbia Circuit (the "Thabid Petition"). *Mahnut v. Gates*, Docket No. 07-1066 (a copy of the Thabid Petition is attached as Exhibit B.) The Thabid Petition asserts, among other things: (i) that Petitioner Thabid was erroneously and wrongfully determined to be an enemy combatant; and (ii) that he is not, in fact, an enemy combatant. On March 16, 2007, the Court of Appeals issued an order setting procedural filing dates, including the date for filing motions to govern proceedings therein, all of which have now been met by the parties. The parties are now awaiting further instruction from the Court of Appeals.

## II. THIS COURT SHOULD REFUSE TO DISMISS THIS CASE PRIOR TO THE RESOLUTION OF THE ALI PETITION BY THE SUPREME COURT.

At a minimum, this Court should hold Respondents' Motion in abeyance pending a determination by the Supreme Court with respect to the Ali Petition as to whether this Court has jurisdiction notwithstanding the MCA and the DTA (the issues directly raised in that Petition). Although the Court of Appeals in

*Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007) determined that this Court did not have such jurisdiction, the Supreme Court declined to consider that holding. *Boumediene v. Bush*, 127 S.Ct. 1478 (2007). However, the Ali Petition directly raises that same question and is currently before the Supreme Court for resolution. This Court should not act on the motion to dismiss prior to the Supreme Court acts on the Ali Petition.

### III.  THIS COURT SHOULD STAY THIS CASE RATHER THAN DISMISS IT.

Even if the Supreme Court declines to grant the Ali Petition, this Court should stay this case pending the resolution by the Court of Appeals of the Thabid Petition and any DTA review petition that Petitioner Ali files pending resolution of the Ali Petition. Those petitions, Thabid's currently and Ali's prospectively, challenge their determinations as enemy combatants and thus substantively raise the question of whether the DTA provides an adequate substitute for traditional habeas proceedings. This is the substantive question at the heart of these cases and at the heart of the Supreme Court's refusal to grant certiorari to decide that question. *See Boumediene*, 127 S. Ct. 1478, 1479 (Statement of Stevens J. and Kennedy J., explaining that available remedies should be exhausted prior to consideration of an application for the writ of habeas corpus).

### A.  This Court Maintains Jurisdiction Over These Habeas Petitions.

District courts have subject-matter jurisdiction over habeas writs under the U.S. Constitution. 28 U.S.C. §2241. Because there is no present rebellion or invasion, Petitioners' habeas privileges before this court cannot be suspended without Congress providing an adequate substitute. U.S. Const. art I, § 9, cl. 2; *INS*

*v. St. Cyr*, 533 U.S. 289, 305 (2001) (explaining that "a serious Suspension Clause issue would be presented" if a statute withdrew habeas power from federal judges "and provided no adequate substitute for its exercise"). In *Boumediene*, a divided panel of the Court of Appeals ruled that, because of the MCA, district courts have no jurisdiction to entertain habeas actions brought by foreign nationals in detention at Guantánamo. In doing so, the Court of Appeals only enforced a supposedly constitutional statutory directive that challenges to such detention must be brought under the DTA in a different forum, the Court of Appeals. Whether or not the DTA provides a constitutionally adequate substitute for the traditional habeas writ is an issue the Supreme Court has reserved for another day. *See Boumediene*, (Statement of Stevens J. and Kennedy J.; Dissent of Breyer J., Souter J., and Ginsburg J.). Pending the resolution of that question, however, this Court maintains its subject-matter jurisdiction, and should exercise its discretion to stay these habeas actions pending a final decision by the Supreme Court on the question of the sufficiency of the DTA procedures as an adequate substitute for traditional habeas proceedings.

B. **A Stay-And-Abey Order Serves the Interests of Justice and Judicial Economy.**

Staying this habeas action serves the interests of justice by aiding Petitioners in receiving a speedy review of the constitutional issues presented in their habeas petitions upon exhaustion of their DTA remedies. Petitioners have been detained in Guantanamo for over five years now. Ordering dismissal of these cases prior to a determination that the DTA is an adequate substitute for habeas will cause

4

unnecessary additional delay that is contrary to the nature of habeas relief. *See Carafas v. La Vallee*, 391 U.S. 234, 238 (1968) (habeas writ, "shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person"). Indeed, courts "should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised." *See Boumediene*, 127 S. Ct. at 1479 (Statement of Stevens J. and Kennedy J.).

Staying this case satisfies the Supreme Court's directive that courts act promptly to ensure that habeas rights are not compromised and serves in the interest of judicial economy. Dismissing this case, on the other hand, would undermine the purposes of habeas. Were the court to dismiss this case, Petitioners would have no legal proceeding in which to directly challenge the adequacy of the DTA review as applied to them in the Court of Appeals. The DTA itself contemplates only the limited review of: (i) whether the status determination of the Combatant Status Review Tribunal ("CSRT") "was consistent with the standards and procedures specified by the Secretary of Defense;" and (ii) "to the extent the Constitution and the laws of the United States are applicable" whether the use of the CSRT standards and procedures is consistent with the Constitution and such laws. 119 Stat. 2742. No provision is made for challenging the adequacy of the DTA review process as compared to habeas, and Respondents have actually argued to this effect in the Court of Appeals. *See* Response in Opposition to Motion to Compel, *Bismullah v. Rumsfeld*, Docket No. 06-1197 (D.C. Circuit filed August 21,

5

2006) at 11 (arguing that the full scope of DTA review is no more that "a review of the record before the agency [the Department of Defense] upon which it based its decision") (attached as Exhibit C). Without the instant case, Petitioners have no place to go to assert their habeas rights if the scope of the DTA is determined to be inadequate.

Respondents would not be prejudiced by a stay. During the stay, each Petitioner would exhaust his DTA remedies and this case would remain inactive. If the DTA is found to be an adequate substitute for habeas, then this Court will be able to lift the stay and dismiss the habeas petition at that time. If the DTA is found to be an inadequate substitute for habeas, then this Court will be in a position to lift the stay and take up where it left off rather than having to begin this case anew.

Staying this case will also allow the important procedural orders that this Court has entered to stay in place. These include not only the protective order entered in this case which, among other things, permits counsel access to Petitioners (Minute Order, dated March 21, 2006) but also the Court's Order requiring Respondent's to provide 30-days notice prior to transfer of Petitioners from Guantanamo (Order, dated September 25, 2006, Docket No. 26 (the "Notice Order"). Given that Petitioners are both native Chinese Uyghurs and face torture and/or death if they are returned to China or rendered to a country that would allow China access to them, the continued vitality of the Notice Order is necessary to protect Petitioners' lives. Contrary to Respondents Motion (at 7), this does not

6

make Petitioner's Motion to Stay and Abey anything more than a "true stay." It is merely reflective of the long-established principle that, even if it is ultimately found that a court does not have jurisdiction, while the matter is under consideration and prior to the Supreme Court deciding that question, the courts have "authority from the necessity of the case to make orders to preserve the existing conditions and subject of the petition." *United States v. United Mine Workers*, 330 U.S. 258, 291 (1947) (*quoting United States v. Shipp*, 203 U.S. 563, 573 (1906) (Holmes, J.) (explaining that "th[e Supreme] court, and th[e Supreme] court alone"[1] can decide such ultimate jurisdictional questions).

The Court of Appeals has not hesitated to apply these principles:

> Of course, whether or not there was jurisdiction to decide the merits, until the question of jurisdiction is determined, there was "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition . . . ." . . . Clearly there was "power to preserve existing conditions while . . . determining [the] authority to grant injunctive relief."

*In re President and Directors of Georgetown College*, 331 F.2d 1000, 1005 (D.C. Cir. 1964) (*quoting United Mine Workers*).[2] Following this precedent, this Court should

---

[1] Respondents cite to *Ayuda v. Thornburg*, 919 F.2d 153 (D.C.Cir. 1990), for the proposition that a Court of Appeals opinion immediately becomes the law of the circuit, depriving the courts of the power to stay and hold in abeyance. (Respondents' Motion at 3-4 n.5.) Respondents' cite is to a concurring opinion; the majority in *Ayuda* stayed that case pending Supreme Court review. *See Ayuda*, 919 F.2d at 153. A separate concurring and dissenting opinion correctly articulates the applicable law that, until the Supreme Court speaks on jurisdiction, the District Court has the power to determine its own jurisdiction including "minimally, the power to maintain the status quo." *Ayuda*, 919 F.3d at 156 (Wald, C.J., concurring and dissenting).

[2] Respondent's reliance on *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) is misplaced and misleading. (*See* Respondent's Motion at 4 and 8). Far

carefully protect the status quo by maintaining the orders entered to date to assure Petitioners are not prejudiced in their ability to litigate the DTA action; to preserve potential remedies before this Court; and to protect Petitioners' safety and lives.

Indeed, Respondents recognize the Court's continuing jurisdiction while the merits are exhausted, litigated, and appealed. Citing *United Mine Workers*, Respondents concedes that portions of the protective order should survive dismissal. (Respondents' Motion at 8-9 n.15.) Respondents' cite no case for the proposition that a Court supposedly without jurisdiction can enforce some portion, but not all, of its orders. The protective order should be kept in place in its entirety.

C.   **The Supreme Court Has Approved the Stay-And-Abey Procedure.**

The Supreme Court has explicitly approved the stay-and-abey procedure that Petitioner requests in the context of federal habeas corpus proceedings. *See Rhines v. Weber*, 544 U.S. 269 (2005). In *Rhines*, a convicted murderer filed a habeas petition in federal court, but failed to exhaust 8 out of 35 claims in state court. Had the district dismissed this "mixed" petition—a petition containing both exhausted and unexhausted claims—the petitioner would have been time-barred by an applicable statute of limitations from re-filing in federal court after exhausting his

---

from requiring the vacature of this case, the Supreme Court made clear in that case that "[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, *foreclosed by prior decisions of th[e Supreme] Court*, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* at 89 (*quoting Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974) (emphasis added)). This is not such as case. The Boumediene denial of certiorari is emphatically not a ruling on the merits (127 S.Ct. at 1479), and this country has rarely faced weightier issues about the meaning of our Constitution than are raised in these cases.

state court remedies. *Id.* at 275. Instead, the district court issued a stay pending petitioner's timely exhaustion of state court remedies. The Supreme Court upheld the district court's decision, holding that:

> [I]t likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition.

544 U.S. at 278; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005); *see also Duncan v. Walker*, 533 U.S. 167, 182 (2001) (Stevens, J., joined by Souter, J., concurring in part and concurring in the judgment) (stating that "there is no reason why a district court should not retain jurisdiction over a meritorious [habeas] claim and stay further proceedings pending the complete exhaustion of state remedies")

Where, as here, the statutory provision which purports to strip habeas power and gives Petitioners a potential avenue to exhaust: (i) was not even enacted when Petitioners habeas petitions were filed;[3] (ii) was (and is) heartily challenged in the courts; and (iii) will be exhausted prior to this Court considering the merits of this case again, it is beyond cavil that good cause exists for the failure to exhaust such a possible remedy prior to filing Petitioner's habeas claims. Staying this action pending Petitioners' exhaustion of their DTA claims in the Court of Appeals is consistent with the Supreme Court's directives in *Rhines*. Analogous to *Rhines*, the

---

[3] It is irrefutable that this Court had jurisdiction over Petitioners' habeas claims when those claims were originally filed, prior to the enactment of the DTA and the MCA. *Rasul v. Bush*, 542 U.S. 466 (2004); *Hamdan v. Rumsfeld*, 126 S.Ct. 2749, 2762-69 (2006).

Petitioner has to exhaust certain remedies (under the DTA) before it is determinable whether he has other remedies (under habeas). As in *Rhines*, it is prudent for this court to stay this action pending DTA exhaustion. Once Petitioners exhaust their DTA remedies and a determination is be made as to whether the DTA in an adequate substitute for habeas, this court may need to be in a position to proceed with this habeas action. Under these circumstances, it is premature for the court to dismiss this action.

## CONCLUSION

At a minimum, this Court should refuse to dismiss this case prior to the resolution of the Ali Petition. More broadly, the Court should deny Respondent's Motion to Dismiss and Grant Petitioners' Motion to Stay and Abey.

Dated: May 3, 2007

Respectfully submitted,

Counsel for Petitioners:

George M. Clarke III
(Bar No. 480073)
Baker & McKenzie LLP
815 Connecticut Avenue, NW
Washington, D.C. 20006-4078, US
Tel: 202 452 7000
Fax: 202 452 7074

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2007, I caused the foregoing Petitioners' Response and Opposition to Respondents' Motion to Dismiss and Petitioiners' Motion for Stay and Abey Order to be hand delivered to the Court Security Officer for filing and service on lead counsel on that day.

George M. Clarke III
Attorney for Petitioners

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Thabid (aka Dawut Abdurehim)<br>Ali (aka Anvar Hassan)<br><br>Petitioners,<br><br>v.<br><br>GEORGE W. BUSH, *et al.*,<br>   Respondents. | No. 1:05cv02398 |

(PROPOSED ORDER)

Having considered Petitioners' Response and Opposition to Respondents' Motion to Dismiss and Petitioners' Motion for Stay-And-Abey Order, it is hereby

ORDERED that Respodents' Motion to Dismiss be denied. It is further

ORDERED that Petitioners' Motion to Stay and Abey be granted.

Dated: _____

_____
U.S. District Judge