*903 99- 10 12(5)*

## [NO ORAL ARGUMENT SCHEDULED]

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| HAJI BISMULLAH, et al., ) | |
| Petitioners, ) | |
| v. ) | No. 06-1197 |
| ) | |
| DONALD H. RUMSFELD, ) | |
| Secretary of Defense, ) | |
| Respondent. ) | |

## RESPONSE IN OPPOSITION TO MOTION TO COMPEL

The Government opposes petitioners' motion to compel. Bismullah has been determined to be an enemy combatant in connection with the ongoing hostilities in Afghanistan against the Taliban and Al Qaeda and communications with him carry with them an inherent risk to the nation's wartime security. Accordingly, counsel access to Bismullah should be controlled by the entry of a protective order by this Court, in the form proposed by the government, and counsel's execution of a memorandum of understanding acknowledging the requirements of that order and agreeing to comply with it. The United States will move for entry of an appropriate protective order on or before August 25, 2006. Until the entry of that order, counsel can submit the petition or any other materials to Bismullah through normal mail channels, where the material would be subject to routine security screening. [1] Any specialized "legal mail" system in these circumstances, however, is appropriately controlled by a protective order, which is not yet in effect for Guantanamo Bay detention

---

[1] Contrary to petitioners' assertions, the Government has not refused to provide the petition or other legal material to Bismullah. Rather, it has refused to provide them absent the clearance of the filings through the Defense Department screening process for material within those filings that would raise security concerns.

cases in this Court pursuant to the Detainee Treatment Act. Bismullah's counsel also has no

right to access classified information in the record of the Combatant Status Review Tribunal

(CSRT), and access to such information must also await entry of a protective order.[2]

The development of a protective order for entry by this Court is not a simple task,

contrary to what Bismullah suggests. Mot. at 9-10. It is a complex document consisting of

numerous provisions designed to balance carefully the interest of allowing counsel to

participate in this proceeding with the compelling national security interests that are at stake

in detaining enemy combatants during ongoing hostilities. Further, the district court

protective order is not an adequate substitute. Rather, that order has led to intractable

disputes over vague or ambiguous provisions, unanticipated consequences that threaten

safety and security at Guantanamo, and gaps that have allowed unwarranted potential security

risks and inappropriate impositions upon the military during a time of war.[3]

Bismullah's overheated rhetoric (p. 2) that these issues "must be resolved

immediately" lacks merit. Bismullah has been detained as an enemy combatant since

February 2003. He was expressly notified in 2004 of his right to submit a petition for habeas

---

[2] The unclassified CSRT material has now been provided to counsel. In future cases, the provision of such material will also be governed by the proposed protective order.

[3] These problems will be explained in detail in the government's motion for a protective order to be filed later this week. In brief, those problems have stemmed from counsel and detainees utilizing the legal mail system to transmit materials that are not related to the litigation challenging the detentions or in a manner that creates a security risk; the pursuit of litigation on behalf of detainees by alleged "next friends" in circumstances where the detainee refuses to participate in the suit; and communications from counsel that have encouraged risky behavior by detainees.

corpus. *See Adem v. Bush*, 425 F.Supp.2d 7, 11-13 (D.D.C. 2006). In spite of this notice, Bismullah never sought habeas corpus relief, nor has he himself sought relief under the Detainee Treatment Act. Likewise, the petitioner here, who claims to be Bismullah's "next friend," has been aware of Bismullah's detention at Guantanamo since March 2003 (Pet. 13), yet did not file any action in until over <u>three years</u> had passed. The government is working diligently to prepare a proposed protective order to govern these proceedings and will move for entry of one by August 25; in these circumstances, no immediate court-ordered access as sought by Bismullah is necessary in advance of the entry of such an order. Indeed, the government has permitted two visits by counsel with Bismullah in the past two months pursuant to a restrictive regime agreed to by counsel.

The government genuinely seeks to allow counsel to participate meaningfully in this litigation, and its proposed protective order will provide counsel with much of what they are seeking. First, it will allow counsel to communicate with the detainee through a special legal mail system designed to preserve attorney-client privilege while still ensuring that national security is protected in these unique circumstances. Second, if the detainee elects to participate in this action, counsel will be given the opportunity to visit the detainee in person. Third, counsel with the necessary clearances will be given access to the full CSRT record to the extent counsel has a need to know this information. This record formed the basis of the CSRT determination and has been certified in this Court as the "complete record upon which the final decision of the [CSRT] was entered in this case." Certified Index to Record at 1.

Counsel seeks, in addition to the record before the CSRT, to be given immediate

access to "all relevant and reasonably available information in the government's possession concerning Bismullah." Mot. at 14. Essentially, counsel seeks to engage in wide ranging discovery in search of any information that ought to have been considered by the CSRT. Such a request wholly incompatible with the scheme of limited judicial review provided by the Detainee Treatment Act. It is also inconsistent with the scope of review familiar in administrative review cases, where a strong presumption of regularity is accorded to the record, and, finally, it is unprecedented with respect to wartime detention of enemy combatants. For all these reasons, to the extent counsel seeks information other than that contained in the certified CSRT record, that request should be denied.

## STATEMENT

**A.** CSRT procedures were established by written orders of the Deputy Secretary of Defense and the Secretary of the Navy "to determine, in a fact-based proceeding, whether the individuals detained * * * [at] Guantanamo * * * are properly classified as enemy combatants and to permit each detainee the opportunity to contest such designation." Deputy Sec. England Memo. at 1 (Pet. Exh. 3). A CSRT is composed of "three neutral commissioned officers" who were not involved in the apprehension or interrogation of the detainee, CSRT Process, Encl. 1, §C(1) (Pet. Exh. 3). A recorder is charged with "obtain[ing] and present[ing] all relevant evidence to the [CSRT] and to cause a record to be made of the proceedings." *Id.* § C(2). During the CSRT hearing, the recorder "shall present to the Tribunal such evidence in the Government Information as may be sufficient to support the detainee's classification as an enemy combatant, including the circumstances of how the

detainee was taken into the custody of U.S. or allied forces." *Id.* § H(4).[4] The recorder provides to the CSRT any evidence which might "suggest that the detainee should not be designated as an enemy combatant." *Ibid.* The recorder also presents an "unclassified report summarizing the Government Evidence and any evidence to suggest that the detainee should not be designated as an enemy combatant." *Id.* § H(5). This report is provided to the detainee and his personal representative in advance of the CSRT proceeding. *Ibid;* Enc. 3, § D. The recorder also "shall call witnesses, if any." Enc. 1, § H(6). The detainee's personal representative also reviews the government information presented, and may independently present evidence "to the CSRT on the detainee's behalf." *Id.*, Enc. 3, § C(2) & (3).

During the CSRT proceeding, the detainee may "present evidence" and testimony. *Id.* Enc. 1, § H(7). In addition to his own testimony, the detainee may present the relevant "testimony of witnesses who are reasonably available," as well as relevant documents and written statements. *Id.* § F(6), H(7). A personal representative shall "assist the detainee in reviewing all relevant unclassified information, in preparing and presenting information, and in questioning witnesses." *Id.* § C(3).

**B.** The Detainee Treatment Act ("DTA"), enacted in December 2005, establishes a

---

[4] Information presented to the CSRT that supports the detainee's classification as an enemy combatant is delineated as the "Government Evidence." *Ibid.* "Government information" is defined as that information which is "reasonably available information in the possession of the U.S. Government bearing on the issue of whether the detainee meets the criteria to be designated as an enemy combatant, including information generated in connection with the initial determination to hold the detainee as an enemy combatant and in any subsequent reviews of that determination, as well as any records, determinations, or reports generated in connection with such proceedings." *Id.* § E(3).

judicial review mechanism for determinations made by a CSRT. Pub. L. No. 109-148, tit. X, § 1105(e)(2), 119 Stat. 2741-42. The statute confers on this Court "exclusive jurisdiction to determine the validity of any final decision of a [CSRT] that an alien is properly detained as an enemy combatant." *Id.* § 1105(e)(2)(A). This Court's review "shall be limited to the consideration of * * * whether the status determination of the [CSRT] with regard to such alien was consistent with the standards and procedures specified by the Secretary of Defense for [CSRTs] (including the requirement that the conclusion of the Tribunal be supported by a preponderance of the evidence and allowing a rebuttable presumption in favor of the Government's evidence)." *Id.* § 1105(e)(2)(C). This Court may also consider, "to the extent the Constitution and laws of the United States are applicable, whether the use of such standards and procedures to make the determination is consistent with the Constitution and laws of the United States." *Id.* § 1105(e)(2)(C).[5]

C. Bismullah, was captured in Afghanistan in February 2003 and has been detained as an enemy combatant since that time. In a hearing held on November 30, 2004, a CSRT reviewed his status and determined that he is an enemy combatant. In June 2006, Haji Mohammad Wali filed a petition for review in this Court under the DTA. Wali states that he is Bismullah's brother, and is acting as his "next friend." Pet. at 6-7. Counsel has been allowed to visit Bismullah in person twice at Guantanamo (in June and August 2006) but has

---

[5] This petition was filed after the enactment of the DTA. Accordingly, this case will remain in this Court regardless of the decision in *Al Odah v. United States*, Nos. 05-5064, 05-5095 through 05-5116, and *Boumediene v. Bush*, 05-5062 & 05-5063, relating to the applicability of the Act to pending cases and other issues that will impact this case, such as whether Guantanamo detainees have rights under the Constitution.

not submitted anything to this Court signed by Bismullah to suggest that Bismullah supports

this lawsuit or would like counsel to represent him.

## ARGUMENT

On or before August 25, 2006, the government will seek the entry of a protective order

that will allow counsel access to much of what he seeks. Until such an order is entered,

however, he is not entitled to the information requested in his motion. Further, even after the

entry of a protective order, Bismullah is not entitled to the sort of wide-ranging discovery of

any "relevant" information contained in government files. Instead, review under the DTA

is on the record of the CSRT, and no additional material need be provided in order for this

Court to carry out that review.

A.    **Entry of a Protective Order on Terms Appropriately
      Protective of the Government's Interests is Required to
      Govern Counsel Access to Classified Material and to
      Represented Detainees.**

Contrary to Bismullah's claim, counsel has no right stemming from the Constitution

or the DTA to access the detainee or classified information in the record. Rather, that access

requires protective measures appropriate to the circumstances of these detentions, and which

will be set forth soon in a proposed protective order. As an initial matter, Bismullah, as an

enemy combatant detained overseas during an ongoing armed conflict, has no right to

counsel; nor does his counsel have any right to access classified information. These points

were fully addressed in *Al-Odah* and *Boumediene*, and a decision on the process appropriate

in this case is closely bound up in this Court's resolution of those appeals.

1. Historically, a captured enemy combatant was entitled to *no* process to challenge

his status. More recently, the process granted to aliens captured on a foreign battlefield was no more than the procedures reflected in Article 5 of the Geneva Convention and Army Regulation 190-8, where there is *no* provision of counsel and detainees are given *no* access to classified information. *See* Army Reg. 190-8, § 1-6.e(3) & (5).[6] The same could occur in this review proceeding.

Further, this Court can carry out its review without a requirement for counsel access to classified information. When this Court performs its familiar role of reviewing the decision of an administrative body, it has the "inherent authority to review classified material *ex parte, in camera* as part of its judicial review function." *Jifry v. FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004). Because this Court can perform that function *ex parte*, there is no reason to allow counsel access to the classified material that is in the CSRT record. Instead, this Court has explained in regard to classified information: "[w]e anticipate that in camera review of affidavits, followed if necessary by further judicial inquiry, *will be the norm*." *Stillman v. C.I.A.*, 319 F.3d 546, 548 (D.C. Cir. 2003) (emphasis added).

**2.** The Due Process Clause does not require that counsel be provided materials that are classified. The rulings of the Supreme Court and this Court have recognized the government's compelling interest in protecting its national security and in the classified information that is vital to the nation's security. *See Haig v. Agee*, 453 U.S. 280, 307

---

[6]    Common Article 3 of the Convention does not address the procedures for determining an individual's status as an enemy combatant during the relevant hostilities. Instead, it only limits the "passing of sentences and the carrying out of executions," neither of which are involved here. 6 U.S.T. 3316, 3318 (1956).

(1981). Because of this compelling interest, this Court has upheld agency action and rejected due process claims even when private parties and their counsel have been denied all access to classified information in the record. *See Jifry*, 370 F.3d at 1184; *People's Mojahedin Org. v. Dep't of State*, 327 F.3d 1238, 1242 (D.C. Cir. 2003) (citing *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 207-09 (D.C. Cir. 2001)); *Holy Land Foundation v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003).

Moreover, this Court should work towards a solution that will allow resolution of this matter while avoiding the difficult constitutional and separation-of-powers questions that would arise if a court attempted to *compel* disclosure of national security information or *require* access to a detained enemy combatant. *See Stillman*, 319 F.3d at 548. Indeed, ordering the release of information or unqualified access to enemy combatants would violate core separation-of-powers principles. *See Hamdi* v. *Rumsfeld*, 542 U.S. 507, 531 (2004) (recognizing detention of enemy combatant as "core strategic matters of warmaking belong in the hands of those who are best positioned and most politically accountable for making them") (plurality op.); *Egan*, 484 U.S. at 527 ("authority to classify and *control access to information* bearing on national security * * * flows primarily from [Article II's] constitutional investment of power in the President and exists quite apart from any explicit congressional grant") (emphasis added); *Holy Land*, 333 F.3d at 164 (recognizing "the primacy of the Executive in controlling and exercising responsibility over access to classified information"). These considerations strongly militate in favor of awaiting the government's proposed protective order, to be filed later this week, prior to ordering access to the detainee

or to the classified materials in the CSRT record.

**B.    Counsel Is Not Entitled To The Production Of Materials Outside of the CSRT Record.**

1. Bismullah next argues (p. 18) that the "plain language" of the DTA authorizes him to "rely on evidence that was not part of the prior CSRT evidentiary record." This contention is without merit because the DTA's plain language clearly sets forth a familiar scheme whereby this Court reviews the decision of the CSRT based on the record before it. The Act specifies that "review" is of "the validity of any final decision of a Combatant Status Review Tribunal." *Id.* § 1105(e)(2)(A). That "review" also "shall be limited to the consideration of * * * whether the status determination * * * was consistent with the standards and procedures specified by the Secretary of Defense for Combatant Status Review Tribunals (including the requirement that the conclusion of the Tribunal be supported by a preponderance of the evidence and allowing a rebuttable presumption in favor of the Government's evidence)." *Id.* § 1105(e)(2)(C). The review may also consider, "to the extent the Constitution and laws of the United States are applicable, whether the use of such standards and procedures to make the determination is consistent with the Constitution and laws of the United States." *Id.* § 1105(e)(2)(C).

Such review is limited by the statute's terms and established precedent to the administrative record before the tribunal. Even outside the wartime context, it is established that statutes providing for review of final agency decisions authorize a "reviewing function [that] is * * * ordinarily limited to consideration of the decision of the agency or court below and of the evidence on which it was based." *United States v. Carlo Bianchi & Co.*, 373 U.S.

709, 714-15 (1963); *see Florida Power & Light Co. v. Lorion* 470 U.S. 729, 743 (1985) (recognizing the "fundamental principle[] of judicial review of agency action" that "'[t]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'") (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)); *Jifry*, 370 F.3d at 1181.

Even in cases where "Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, [the Supreme] Court has held that consideration is to be confined to the administrative record and that no de novo proceeding may be held." *Carlo Bianchi*, 373 U.S. at 715. Here, Congress specified narrow review of the administrative decision – to determine if the decision was "consistent with" CSRT procedures; whether the decision was "supported by a preponderance of the evidence"; and whether the "use of such standards and procedures * * * is consistent with the Constitution and laws of the United States," to the extent applicable. *Id.* § 1105(e)(2). Each of these limitations calls for a review of the record before the agency upon which it based its decision. Accordingly, this type of record review is limited to assessing the validity of the decision of the CSRT based upon the record before it and applying the appropriate standard of review. *See Cabinet Mountains Wilderness/Scotchman's Peak Grizzly Bears v. Peterson*, 685 F.2d 678, 685 (D.C. Cir. 1982) ("applicability of de novo review to administrative actions is limited and is generally not presumed in the absence of statutory language or legislative

intent to the contrary"). [7]

Bismullah urges that review need not be on the record of the proceeding because the detainee may challenge the CSRT determination "on the ground that the determination is not supported by 'a preponderance of the evidence'" and the statute does "not limit" this review to "a preponderance of the evidence 'in the record.'" Mot. at 18. This argument simply fails to accord meaning to the language of the statute. The Act specifies that this Court may assess whether the "requirement *that the conclusion of the Tribunal* be supported by a preponderance of the evidence" has been met, DTA, § 1105(e)(2)(C) (emphasis added), as part of an inquiry into whether a CSRT decision is "consistent with the standards and procedures specified by the Secretary of Defense." *Ibid.* By its terms, this provision limits review to the question of whether the CSRT followed appropriate procedure and rendered a decision supported by sufficient evidence. In determining on review whether the "the tribunal (*i.e.* the CSRT) rendered a decision "consistent with" DOD CSRT procedures requiring support of a CSRT decision by a "preponderance of the evidence," it makes no sense to consider evidence not before the CSRT.

Rather, this type of review provision is consistent with this Court reviewing the CSRT

---

[7] Review on the record is, of course, particularly appropriate where Congress has lodged review of an agency determination in the court or appeals, which is not suited for factfinding. *See Bianchi*, 373 U.S. at 715; *Midwest Independent Transmission System Operator, Inc. v. FERC*, 388 F.3d 903, 910 (D.C. Cir. 2004) (court of appeals review appropriate when "'[t]he factfinding capacity of the district court is . . . unnecessary to judicial review of agency decisionmaking,' because the administrative proceedings have already generated the record necessary for appellate review"); *General Elec. Uranium Management Corp. v. U.S. Dept. of Energy*, 764 F.2d 896, 903 (D.C. Cir. 1985).

factual determination to ensure, at most, that it is supported by substantial evidence. *See*

*Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) ("Substantial evidence * * * *

means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion"); *Jifry*, 370 F.3d at 1181 ("'[s]ubstantial evidence' is simply such relevant

evidence as a reasonable person might accept as proof of a conclusion"); *Charlton v. FTC*,

543 F.2d 903, 907 (D.C. Cir. 1976) (explaining that in circumstance where "agency itself is

to initially ascertain the facts" under a "preponderance of the evidence" standard, "on judicial

review of agency action, [those] administrative findings of fact must be sustained when

supported by substantial evidence on the record considered as a whole" as the standard to be

utilized by the "reviewing court").

Indeed, every administrative review proceeding must necessarily develop a standard

of review for administrative resolution of factual issues, and nothing about defining that

standard of review suggests that this Court should conduct its review by going outside of the

record. *See Carlo Bianchi*, 373 U.S. at 715 ("the standards of review adopted * * * 'not

supported by substantial evidence'-have frequently been used by Congress and have

consistently been associated with a review limited to the administrative record * * * * [t]his

standard goes to the reasonableness of what the agency did on the basis of the evidence

before it, for a decision may be supported by substantial evidence even though it could be

refuted by other evidence that was not presented to the decision-making body"). Rather,

when Congress intends to allow factfinding when a court is conducting review of an agency

decision, it provides expressly for such factfinding. *Cabinet Mountains*, 685 F.2d at 685;

*see, e.g.,* 28 U.S.C. § 2347(c) (Hobbs Act provision addressing "leave to adduce additional evidence"); 5 U.S.C. § 706(2)(F); *Reid ex rel. Reid v. District of Columbia,* 401 F.3d 516, 521 (D.C. Cir. 2005) (IDEA expressly authorizes district court to "'hear additional evidence at the request of a party'" and "'bas[e] its decision on the preponderance of the evidence'") (quoting 20 U.S.C. § 1415(i)(2)(B)). In sum, the DTA does not provide for evaluating evidence outside of the record reviewing a CSRT's factual conclusion of evidentiary sufficiency.

In accord with ordinary administrative review principles, the DTA is thus properly read as limiting this Court's review to the record before the CSRT. It is important to remember, however, that this is not a garden-variety administrative law case. Rather, it is the extraordinary grant of review of an enemy combatant determination during an ongoing armed conflict. To read the DTA to afford wide ranging discovery and *de novo* fact review, as petitioner suggests, is not only contrary to established administrative review principles, it is also to argue that the DTA grants greater judicial review than that has historically been granted to even a person convicted by a military commission. *See Yamashita v. Styer,* 327 U.S. 1, 8, 23 (1946). Such review is not remotely contemplated by Article 5 of the Geneva Convention or Army Regulation 190-8, and it is not even contemplated in *Hamdi* even for citizens held in this country as enemy combatants. At bottom, the DTA, which provides record review of final CSRT decisions, cannot fairly be construed as providing discovery and *de novo* review, especially where doing so both has no historical precedent and would impose of the Executive an unprecedented wartime burden.

2. Bismullah next argues (p. 8) that factfinding is allowed because the DTA "confers original – not appellate – jurisdiction on this Court." The fact that the DTA provides direct review of a CSRT determination in this Court lends no support to Bismullah's argument that review should extend beyond the record in this case. Rather, as we have shown, record review is the norm when original jurisdiction is conferred upon this Court. Similarly, whether or not this case involves "administrative decisions entitled to deference" (p. 19 n.11) or "claims" rather than "appeals" (*ibid.*) says nothing about whether this case involves review based on the record before the CSRT. Instead, as we have explained, the statute itself calls for record review by conferring on this Court "exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review." DTA § 1005(e)(2)(A).

Bismullah urges (p. 19 n.11) that he has "made a strong showing of inadequate fact-finding procedures" such that this Court needs to consider extra-record evidence. In a similar vein, Bismullah's counsel urges that "significant exculpatory information has been provided" to various United States officials, thereby justifying a discovery-like process to determine if the government is in possession of this evidence. But the DTA does not authorize fact-finding by this Court in these or any other circumstances. *Cf. Camp*, 411 U.S. at 142 ( *de novo* hearing allowed in APA claims in limited circumstances because 5 U.S.C. § 706(2)(F) expressly so provides). Instead, Congress directed the Department to ensure that its already existing administrative review board process for periodic review of detainee status that takes into consideration any relevant new information. *See* DTA § 1005(a)(1) & (3) (directing Secretary to promulgate "procedures of the * * * Administrative Review Boards" that, among

-15-

other things, "provide an annual review to determine the need to continue to detain an alien who is a detainee" and "provide for periodic review of any new evidence that may become available relating to the enemy combatant status of a detainee"). The Department has updated its preexisting regulation to include those procedures.    *See* ARB Memo. and Procedures, Enc. 13 (July 14, 2006).[8] The ARB procedures, in existence since 2004, provide for annual "consideration of all relevant and reasonably available information to determine whether the enemy combatant represents a continuing threat." ARB Mem., § 1.c. In those proceedings, the detainee is allowed to "present information relevant to his continued detention, transfer, or release." *Ibid.*; *Id.* encl. 3, § 3.a (detainee "shall be provided a meaningful opportunity to be heard and to present information to the ARB"). Under the present regulations, any new information relating to the enemy combatant status of a detainee that is presented to an ARB shall be brought to the attention of the Deputy Secretary of Defense as soon as practicable. The Deputy Secretary of Defense shall review the new evidence and decide whether to convene a new CSRT to reconsider the basis of the detainee's enemy combatant status. *See* ARB Memo. and Procedures, Enc. 13.

In sum, the DTA does not authorize the submission of new evidence to this Court relating to the detainee's status as an enemy combatant; such evidence must instead be submitted to DoD, consistent with the congressionally-authorized procedures for consideration of such evidence.

Finally, Bismullah argues that he must be able to submit evidence to this Court "akin

---

[8] Http://www.defenselink.mil/news/Aug2006/d20060809ARBProceduresMemo.pdf.

to an 'actual innocence' claim in *habeas corpus* proceedings;" if not, Bismullah argues (p. 19-20), the DTA would constitute a suspension of the writ of habeas corpus. This claim is meritless, for reasons that have been addressed in detail in the *Al Odah* briefing. First, alien combatants held overseas have no constitutional rights under the Suspension Clause. *See Johnson v. Eisentrager*, 339 U.S. 763, 777-79 (1950). Second, even if Suspension Clause rights existed, they do not require or necessitate any factual review of the CSRT determination. *See INS* v. *St. Cyr*, 533 U.S. 289, 305-06 (2001) (under traditional habeas review, "other than the question whether there was some evidence to support the order, the courts generally did not review the factual determinations made by the Executive"); *Yamashita*, 327 U.S. at 8 (military tribunals are "not subject to judicial review merely because they have made a wrong decision on disputed facts."). And third, what Bismullah calls an "actual innocence" claim is in fact a claim that Bismullah is not properly designated as an enemy combatant. A challenge to the evidentiary sufficiency of the CSRT decision, designating him as an enemy combatant, is properly rendered on the CSRT record. *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 455-457 (1985) (the some evidence standard "does not require" a "weighing of the evidence," but rather calls for assessing "whether there is any evidence in the record that could support the conclusion")).

3.    Bismullah also argues that he is entitled to obtain "all information in the possession of the government that is relevant" (Mot. at 15) in order to "show that the Recorder failed to discharge his obligations consistent with the CSRT Procedures" to provide relevant information to the CSRT. Mot. at 16. Bismullah argues that such review is entailed

in determining whether the "CSRT Procedures" were followed. Mot at 16. Such a request is essentially an effort to disguise free-ranging discovery of any relevant material possessed by the government in the guise of a procedural challenge. But Bismullah misperceives the scope of this Court's review as well as the nature of the recorder's task, which is routine and entitled to a presumption of regularity.

First, Bismullah misperceives the scope of this Court's review, which is of the "validity of any final decision of a CSRT." DTA, § 1005(e)(2)(A). That review, as we have explained, is on the record and does not call for opening up to review the recorder's process of identifying and gathering relevant evidence. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 417, 420 (1971) (in evaluating "whether the Secretary's action followed the necessary procedural requirements" under the APA, explaining that "where there are administrative findings that were made at the same time as the decision * * * there must be a strong showing of bad faith or improper behavior before [an] inquiry may be made" into the "mental processes of administrative decisionmakers"); *Community for Creative Non-Violence v. Lujan*, 908 F.2d 992, 998 (D.C. Cir. 1990) (no review of "agency decisionmaking process" when there is an "adequate record in this case for effective judicial review"). Instead, this Court's review of the process is based on the record before the administrative decisiomaker, *i.e.*, the CSRT. *See James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir.1996).

Thus, this Court has rejected the notion that in conducting review of an agency decision, it should look behind the actions of officials who are not the ultimate

decisionmaker. In *James Madison*, this Court rejected the assertion that because "the examiners were the 'real decision-makers,' * * * the district court should have reviewed whatever materials the examiners may have seen during their on-site investigation." *See James Madison*, 82 F.3d at 1095. Instead, there was no reason to look behind the actions of the examiners, just as here there is no reason to look beyond the evidence compiled by the recorder; rather, review is of the information submitted by the examiner or the recorder for use in making the ultimate administrative decision. *Id.* at 1095-96. Ultimately, a contrary view would turn the Court into the first line factfinder searching for "all information in the possession of the government that is relevant" (Mot. at 15), but in administrative review courts "do not duplicate agency fact-finding efforts." *James Madison*, 82 F.3d at 1096.

Indeed, the recorder's task is routine and subject to a strong presumption of regularity. The recorder's job, essentially, is to compile material that is both relevant and reasonably available and to present that material to the CSRT. CSRT Procedures, Enc. 1, § C(2).[9] Such a routine task is entitled to the strongest sort of presumption of regularity in reviewing the

---

[9] Bismullah vastly overstates the recorder's role. With one small exception, the recorder simply compiles relevant material that is reasonably available in government files (*see* CSRT Procedures, Enc. 1, § E(3) (defining "Government Information"), and places that information into the CSRT record. *Id.* § H(4). The only government information that would not enter the CSRT record is material that goes *beyond* what would be sufficient to conclude that the detainee is an enemy combatant, *e.g.*, duplicative material supporting the fact that a detainee is an enemy combatant. As an additional check, the Personal Representative also reviews all of the government information, and may independently present evidence "to the CSRT on the detainee's behalf." *Id.*, Enc. 3, § C(2) & (3). And, of course, Bismullah himself could testify and submit evidence that is reasonably available. *Id.*, Enc. 1, § F(6). Thus, Bismullah's claim (p. 15) that the "Recorder *alone* is responsible for reviewing all information * * * that is relevant" is not true.

decision of the CSRT. *See Martino v. U.S. Dept. of Agriculture*, 801 F.2d 1410, 1413 (D.C. Cir. 1986. Indeed, the original purpose of the presumption of regularity is to allow reliance upon the record upon which a decision is based. *See Dorsey v. Gill*, 148 F.2d 857, 874 (D.C. Cir. 1945).

In sum, the functions of the recorder cannot be utilized as an avenue for freewheeling discovery into "all information in the possession of the government that is relevant." Mot. at 15. Instead, the review in this Court is to be based upon the record before the CSRT, and that record will be provided to this Court and, upon entry of a protective order, to counsel.

## CONCLUSION

For the foregoing reasons, this Court should deny Bismullah's motion to compel.

Respectfully submitted,

PETER D. KEISLER
*Assistant Attorney General*

GREGORY G. KATSAS
*Deputy Associate Attorney General*

DOUGLAS N. LETTER
*Terrorism Litigation Counsel*

ROBERT M. LOEB
(202) 514-4332
AUGUST E. FLENTJE
(202) 514-1278
Attorneys, Appellate Staff
Civil Division, Room 7268
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

AUGUST 2006

# CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2006, I caused copies of the foregoing "RESPONSE IN OPPOSITION TO MOTION TO COMPEL" to be served upon counsel of record by causing copies to be sent by Fed Ex overnight delivery and by e-mail transmission to:

    Jeffery I. Lang
    Jennifer R. Cowan
    Debevoise & Plimpton
    919 Third Avenue
    New York, New York 10022


                                    _____
                                    Robert M. Loeb